## CONTINENTAL MILLING AND FEED CO. *v.* DOUGHNUT CORPORATION OF AMERICA

[No. 148, October Term, 1945.]

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, J.J.

*Harry N. Baetjer* and *J. Crossan Cooper,* with whom were *Venable, Baetjer & Howard, Nathan Patz* and *Rome, Rome & Hamburger* on the brief, for the appellant.

*Philip B. Perlman,* with whom were *Max A. Goldhill, Wirt A. Duvall, Jr., Samuel H. Hoffberger, Emanuel Gorfine* and *Harry Troth Gross* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit in equity was brought by Doughnut Corporation of America, which operates a flour mill at Ellicott City, to correct an award made by the arbitrators of a claim against Continental Milling and Feed Company, purchaser of 48,754 tons of by-products of the mill.

The bill of complaint alleges that in 1932 complainant entered into a contract to sell all of its middlings and bran to defendant at the prices quoted in the *Northwestern Miller,* a weekly trade journal published in Minneapolis, less discount of $3 per ton; and that in 1937 it executed another contract effective August 1, 1937, reducing the discount to $2.25. The bill then alleges that in 1942, when prices were set by the Federal Government, its attention was called to the fact that the published quota-

tions had been substantially lower than the actual market prices, and following an investigation it was found that the quotations were between $3 and $4 per ton less than they should have been from January 1, 1935, to July 31, 1942; and the parties submitted the claim for underpayments to three arbitrators, A. E. Duncan, W. H. Marshall and L. I. Whiteford, chosen by the American Arbitration Association. According to complainant, the underpayments totaled $166,984.22, the difference between the erroneous quotations and the quotations for various milling centers appearing in the *Northwestern Miller*, the *Southwestern Miller*, and other publications; but the arbitrators used only the quotations in the *Northwestern Miller* for the City of Buffalo and added the freight per ton to Baltimore, and by this criterion found that the underpayments totaled $166,289.83; but after making that determination, the arbitrators unjustifiably reduced the amount of the award by deducting 50 cents per ton. The bill further alleges that the arbitrators, ignoring the period to be considered under the arbitration agreement, made an award for underpayments only from January 1, 1935, to August 31, 1937, on the theory that complainant was negligent in failing to compare the quotations in the *Northwestern Miller* with the market prices which prevailed in Baltimore from week to week; and that the arbitrators thereby reduced the award unlawfully to $44,-328.15, which sum complainant refused to accept in full setlement of its claim. The bill finally alleges that the arbitrators further exceeded their authority by declaring that there was no evidence that defendant or any of its officers, directors, or employees had attempted or conspired to defraud complainant. The bill prays the Court to set aside those parts of the award which were not authorized by the arbitration agreement, and to decree that defendant owes complainant for the entire amount of underpayments in the period beginning January 1, 1935, and ending July 31, 1942.

Defendant demurred to the bill on the ground that the award is valid and conclusive. The chancellor held (1)

that the criterion used by the arbitrators for determining the market prices in Baltimore was valid, (2) that their refusal to make an award for underpayments in the period from August 31, 1937, to July 31, 1942, was invalid, (3) that the decision that there was no attempt or conspiracy to commit fraud was invalid, and (4) that the valid parts of the award can be separated from the invalid parts. Defendant is appealing from the chancellor's order overruling the demurrer.

It is a fundamental principle that where the parties to a dispute decide of their own accord to submit their dispute to arbitration without restriction or condition, the award on the subject matter, in the absence of fraud or mistake, is binding and conclusive upon the parties. *J. F. Fitzgerald Construction Co. v. Southbridge Water Supply Co.*, 304 Mass. 130, 23 N. E. 2d 165; *Stowe v. Mutual Builders Corporation*, 252 Mich. 492, 233 N. W. 391. The Court will not review the findings of law and fact made by arbitrators, or substitute its judgment for theirs. Arbitrators are expected to frame their award on broad views of justice, which may sometimes deviate from strict rules of law. Their good faith in the discharge of their duties will be presumed, and their award will not be disturbed unless it clearly appears that they were influenced by partiality or corruption. The reason for this doctrine is that an award by arbitrators is the decision of a tribunal which the parties themselves have created, and by whose judgment they have mutually agreed to abide. Very often these tribunals are without legal training, and the purpose of the parties in creating them is to have their disputes settled speedily and inexpensively by a decision which will be final and unalterable. Obviously, if the decision of such a tribunal should be subject to review under the strict rules of the law, the arbitration, instead of promoting economy and finality, would generally be but a forerunner to protracted litigation. To avoid such controversies the courts have adopted the rule that, after the parties to an arbitration have had a full and fair hearing, the award will be expounded favorably, and every

reasonable intendment will be made in its support. *Roberts v. Consumers' Can Co.,* 102 Md. 362, 369, 62 A. 585, 111 Am. St. Rep. 377; *Dominion Marble Co. v. Morrow,* 130 Md. 255, 260, 100 A. 292; *McDonald v. Real Estate Board of Baltimore City,* 155 Md. 377, 382, 142 A. 261; *Pumphrey v. Pumphrey,* 172 Md. 323, 191 A. 235; *Boston Water Power Co. v. Gray,* 6 Metc., Mass., 131, 165; *Leslie v. Leslie,* 50 N. J. Eq. 103, 24 A. 319. In this case the problem of determining the market prices of millfeeds over a period of 7 years and 7 months was not a simple one. The arbitrators found that the prices of millfeeds in Baltimore, which is not a primary market for such byproducts, are affected by the quotations of the primary markets as well as by local conditions and imports from South America. They also found that the quotations in the primary markets varied from 25 cents to $1 per ton. After considering various suggestions for determining the market prices in Baltimore, the arbitrators decided to take each weekly quotation per ton for Buffalo, which is a primary market for millfeeds, add the freight to Baltimore, and then deduct 50 cents. While this criterion may not have been exact, the arbitrators did not exceed their power in adopting it.

When, however, we come to the decision of the arbitrators to reject the claim for underpayments in the period from August 31, 1937, to July 31, 1942, we have an entirely different situation. In order that an award shall be binding, the arbitrators must follow exactly the authority given them by the agreement of the parties. If they exceed their authority, the award is void to that extent. In a case in New York Chief Judge Cardozo said of arbitration: "The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. * * * No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness. Our own favor or disfavor of the cause of arbitration is not to count as a factor in the appraisal of the thought of others." *Marchant v. Mead-Morrison Mfg. Co.,* 252

N. Y. 284, 169 N. E. 386, 391. Sound policy demands that the terms of an arbitration agreement must not be strained to discover power to pass upon matters in dispute, but the terms must be clear and unmistakable to oust the jurisdiction of the Court, for trial by jury cannot be taken away in any case merely by implication. *Jacob v. Weisser,* 207 Pa. 484, 56 A. 1065, 1067; *B. Fernandez & Hnos v. Rickert Rice Mills,* 1 Cir., 119 F. 2d 809, 136 A. L. R. 351, 359.

In this case the parties submitted only one issue to arbitration by their agreement dated January 18, 1944. Doughnut Corporation of America claimed that it had been underpaid because the quotations from January 1, 1935, to July 31, 1942, were erroneous; Continental Milling and Feed Company claimed that it had paid fully for all millfeeds delivered during that entire period. Defendant contends that complainant was estopped from recovering any underpayments under the second contract. It is argued that in June, 1937, complainant's vice president was told that the quotations were possibly incorrect and he then corresponded with the *Northwestern Miller* on the subject, and the arbitrators took the view that the vice president should have investigated this suggestion thoroughly, and, if he had done so, defendant could have charged its customers higher prices. However, it must not be overlooked that actual or constructive fraud is an essential ingredient of equitable estoppel. An equitable estoppel is the effect of voluntary conduct of a person whereby he is absolutely precluded, both at law and in equity, from asserting rights which otherwise might have existed as against another, who has relied in good faith upon such conduct and has been led thereby to change his position for worse, and who acquires on his part some corresponding right. *Pearre v. Grossnickle,* 139 Md. 1, 114 A. 725; *Cityco Realty Co. v. Slaysman,* 160 Md. 357, 153 A. 278, 76 A. L. R. 296. In the instant case there is no basis upon which to apply the doctrine of estoppel. Yet the arbitrators, after determining the amount of underpayments to be $166,289.83, decided to make their award

for a shorter period than the arbitration agreement designated. It is our judgment that the reduced award is not binding upon the parties. The solicitors for appellant urged in their argument that they had raised the issue of estoppel in the brief which they presented to the arbitrators and that appellee had met the issue, and therefore the arbitrators had the right to consider it. But the record does not contain the arbitration proceedings, and hence we cannot pass on that question. If appellant desires to raise such a contention, it must do so by answer, and the chancellor can then consider such evidence as may be presented before deciding that question. The arbitrators also found that, although the quotations were supplied to the *Northwestern Miller* by an agent of defendant, nevertheless neither defendant nor any of its officers, directors or employees had attempted or conspired to defraud complainant of any amount due under the contracts. This part of the award is void because the parties did not submit such an issue to arbitration, and moreover no officer, director or employee was a party to the arbitration.

The law is established that where arbitrators exceed there authority and include in their award matter beyond the submission, and the part which is void cannot be separated from the remainder without injustice, the whole award is void. *Bullock v. Bergman,* 46 Md. 270; *Rand v. Mather,* 11 Cush., Mass., 1, 59 Am. Dec. 131; *Carnochan & Mitchell v. Christie,* 11 Wheat. 446, 466, 6 L. Ed. 516, 521; 6 *Williston on Contracts,* Revised Ed. Sec. 1929. The courts recognize that arbitrators may frame one part of their award with a view to the other, and each part may be varied by the view which they take of the whole. It is accordingly held that evidence is not admissible to show in what manner the arbitrators reached their conclusion or to explain the items making up the total amount awarded. *Bullock v. Bergman,* 46 Md. 270, 279. In the case now before us the arbitrators made an award for the number of tons delivered during the period of 2 years and 8 months, whereas they should

have awarded for the period of 7 years and 7 months. However, they definitely determined that the proper market price should be the quotations per ton for Buffalo plus the freight per ton to Baltimore, minus 50 cents. This criterion can be easily applied to the total number of tons delivered during the entire period. In fact, this is practically what the arbitrators did, but they improperly excluded the deliveries from August 31, 1937, to July 31, 1942. By restoring the amount improperly excluded, the award will be exactly what they determined before they exceeded the scope of their authority. Under these circmustances the majority of this court finds no necessity to annul the entire award and compel the parties to resubmit the controversy to arbitrators or the court. However, the chancellor's order overruling the demurrer must be affirmed.

*Order affirmed and cause remanded, with cost.*