467 A.2d 1025

Robert F. WILSON

v.

McGROW, PRIDGEON & COMPANY, P.A.

No. 5, Sept. Term, 1983.

Court of Appeals of Maryland.

Dec. 6, 1983.

Charles M. Kerr, Baltimore (John Henry Lewin, Jr. and Venable, Baetjer & Howard, Baltimore, on the brief), for appellant.

K. Donald Proctor, Towson (Miles & Stockbridge, Towson, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

RODOWSKY, Judge.

 Enforceability of a covenant to arbitrate future disputes arising under an employment contract between a professional corporation and an individual is at issue on this appeal. The problem is one of statutory construction involving the Maryland Uniform Arbitration Act (the Act), Md. Code (1974, 1980 Repl.Vol.), §§ 3–201 through 3–234 of the Courts and Judicial Proceedings Article (Courts Article). The Act is all of Subtitle 2 of Title 3 of the Courts Article, and in § 3–206 provides:

(a) *Validity.*—A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract.

(b) *Agreement between employers and employees.* —This subtitle does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in the agreement that this subtitle shall apply.

The professional corporation contends, and the courts below held, that the exclusion from the Act effected by § 3–206(b) applies to an employment contract between an employer and an individual employee, and that no other Maryland statute alters, as to individual employment contracts, the common law rule under which agreements to arbitrate future disputes are unenforceable. The employee contends that § 3–206(b) was intended by the General Assembly to be limited to arbitration provisions contained in collective bargaining agreements. Because the statute is ambiguous in this respect and because the legislative history reflects an intent to limit the exclusion to collective bargaining agreements, we shall reverse.

Respondent, McGrow, Pridgeon & Company, P.A. (McGrow), was incorporated July 1, 1978 and has engaged in providing accounting services. Petitioner, Robert F. Wilson

(Wilson), is a CPA and was an original principal, stockholder, officer and director of McGrow. McGrow and Wilson entered into a written employment agreement dated July 1, 1978 which provided in part that "[a]ny controversy or claim arising out of or relating to [that] Agreement, or the breach thereof, shall be settled by arbitration in Maryland and in accordance with the rules of the American Arbitration Association." The employment contract was for an initial term of one year ending June 30, 1979 and automatically renewed for successive one year periods unless terminated by, *inter alia,* written notice given 30 days prior to the end of a term. Wilson terminated his relationship with McGrow effective June 30, 1981 and established his own accounting firm. On December 2, 1981 McGrow filed a complaint against Wilson alleging that Wilson had breached fiduciary duties owing by him to McGrow by the manner in which Wilson had prepared for his departure from McGrow and for entry into business with the new accounting firm. Wilson petitioned the trial court for an order compelling arbitration of the dispute. Enforcement of the arbitration clause was denied and the denial was affirmed by the Court of Special Appeals in an unreported opinion. We granted Wilson's petition for certiorari.

As the intermediate appellate court read § 3–206(b), the statute is "an unambiguous and unequivocal provision of the law." That court reasoned that because the subject arbitration clause was in a contract between an employer and an employee, the agreement to arbitrate could be brought under the Act only by express provision in the contract. This had not been done.[1] However, § 3–206(b) speaks of "an agreement" in the singular number as the subject of the exclusion while the number of the employer party and the number of the employee party are each expressed in the

---

[1]. The questions raised in Wilson's petition for certiorari accepted as a premise that the language in the arbitration clause, quoted above, fails to satisfy that portion of § 3–206(b) reading, "unless it is expressly provided in the agreement that this subtitle shall apply." We therefore express no opinion on that aspect of this case.

plural. Section 3–206(b) also embraces an alternative form of arbitration agreement in which employers and employees respectively have representatives as signatories. A literal reading of the exclusion would require multiple employers, or their representative, on one side of a single agreement and multiple employees, or their representative, on the other side of that agreement. This reading describes a collective bargaining agreement of a kind found in the construction industry where it is not uncommon for an association of contractors to bargain on behalf of employers with unions representing various trades. An example of such a collective bargaining agreement was involved in *National Electrical Industry Fund v. Bethlehem Steel Corp.,* 296 Md. 541, 463 A.2d 858 (1983).

McGrow does not dispute that § 3–206(b) embraces collective bargaining agreements. Its position is that that subsection is not limited to collective bargaining agreements and includes individual employment contracts as well. This is because, under the rule of interpretation of Md.Code (1957, 1981 Repl.Vol.), Art. 1, § 8, "[t]he singular always includes the plural, and vice versa, except where such construction would be unreasonable." Consequently, it is said § 3–206(b) reaches an agreement between a single employer and a single employee. Of course, invocation of Art. 1, § 8 is a recognition that the words of Courts Article, § 3–206(b) are not dispositive by direct application here.

Elsewhere in the Act, references to those who are bound on one side or the other of an arbitration agreement are made in the singular number.[2] Indeed, throughout the Act it is the singular number which is likewise used to state the number of those on one side or the other when an arbitration proceeding or a court proceeding is being described. Generally, the parties to those proceedings are the parties to

---

**2.** *See, e.g.,* § 3–207(a) ("If a party to an arbitration agreement ... refuses to arbitrate, the other party may file a petition....."); and § 3–208(a) ("If a party denies existence of the arbitration agreement, he may petition a court to stay ... proceedings.").

an arbitration agreement. This use of the singular is simply a reflection of a uniform style guideline—"[u]se the singular number"—recommended for the recodification project which has produced, *inter alia,* the Courts Article. *See* Governor's Commission to Revise the Annotated Code of Maryland, *Revisor's Manual* 42 (2d ed. 1973). Prior to recodification the comparable provision to § 3–206(b) read:

> This article does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in such agreement that this article shall apply. [Md.Code (1957, 1968 Repl.Vol.), Art. 7, § 1.]

The Revisor's Note to the recodification of this language states that "[t]he only changes made are in style." *See* Revisor's Note to Md.Code (1974), § 3–206 of the Courts Article. Thus, "article" was changed to "subtitle" and "such" agreement became "the" agreement. But the reference to the number of persons on each side of an agreement continue to be referred to by use of the plural. One inference is that conversion to the singular in conformity with the code revision style guideline would not be a change in style, but one of substance. The phraseology of the statute on its face, in relation to the style used in other portions, raises a question of whether the contract between an individual employee and the employer is intended to be embraced within the exclusion from the Act.

Further § 3–232 of the Act directs that it "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it." However, § 1 of the Uniform Arbitration Act, approved by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association in 1955, is contrary to § 3–206(b) of the Maryland Act. The promulgated version reads (Unif. Arbitration Act § 1, 7 U.L.A. 4 (1978)):

> This act also applies to arbitration agreements between employers and employees or between their respective rep-

resentatives [unless otherwise provided in the agreement].[3]

One aspect of the issue in the case at bar is the extent to which the General Assembly intended its departure from the recommended version of the Uniform Arbitration Act to go. The directive in § 3–232 seems to dictate that the meaning to be placed on the words, "an agreement between employers and employees," in § 3–206(b) be limited so as to keep the admittedly variant Maryland version as close to the promulgated version as the words used in the Maryland variation would reasonably permit. Wilson's interpretation of § 3–206(b) which limits the exclusion to arbitration provisions in collective bargaining agreements would give some meaning to § 3–232. McGrow's position which has the exclusion applying to all arbitration agreements between employers and employees, including an arbitration clause in the employment contract of a single individual, enlarges the conflict between the Uniform Arbitration Act and § 3–206(b) of the Maryland version, and gives no effect to § 3–232. The issue presented in this appeal is not one which can be resolved merely by reading the text of the statute.

Reference to the usual aids for statutory construction makes clear that the purpose of § 3–206(b) was to exclude arbitration provisions in collective bargaining agreements. The Maryland Act is derived from the uniform law. *See Frederick Contractors v. Bel Pre Medical Center,* 274 Md. 307, 314, 334 A.2d 526, 530 (1975). As noted above, the uniform law is drafted to apply "to arbitration agreements between employers and employees or between their respective representatives [unless otherwise provided in the agreement]." In their Prefatory Note to the uniform law the commissioners state that the statute "covers labor-management agreements to arbitrate unless the agreement otherwise provides." Prefatory Note to Unif. Arbitration Act, 7 U.L.A., *supra,* at 2.

---

**3.** Bracketed material appearing in the text represents language which may be added or omitted at the option of the adopting state.

Application of the proposed uniform law to arbitration provisions in collective bargaining agreements met with opposition from organized labor and from professional labor arbitrators. The concern seems to have been that formalizing the procedure would impede the efficacy of the arbitration process in the labor relations context and that judicial review would restrict the ability of arbitrators to fashion practical resolutions based on their experience with the problems in a given industry. *See* Frey, *The Proposed Uniform Arbitration Act Should Not Be Adopted,* 10 Vand. L.Rev. 709 (1957); Howard, *The Proposed Uniform Arbitration Act: Yes or No,* 22 Mo.L.Rev. 233 (1957); Howard, *Labor-Management Arbitration: "There Ought To Be a Law"—or Ought There?,* 21 Mo.L.Rev. 1 (1956); Syme, *Voluntary Labor Arbitration Is Threatened!,* 7 Lab.L.J. 142 (1956). *See generally* Gregory and Orlikoff, *The Enforcement of Labor Arbitration Agreements,* 17 U.Chi.L.Rev. 233, 245–48 (1950).

In June of 1962 the Committee on Laws of the Maryland State Bar Association proposed at the annual meeting a "State Arbitration Act based upon the provisions of the Uniform Act and the laws of other states...." 67 Transactions of the Md. State Bar Ass'n 255 (1962). The motion was approved. *Id.* at 97. Thereafter the Committee on Laws drafted a proposed bill. It was sent to the Legislative Council of the General Assembly and on June 5, 1963 referred to the Judiciary Committee of that body. Legislative Council of Maryland, *Report to the General Assembly of 1964* 255. The proposal was designated as Item No. 161. Action on Item 161 was deferred to 1964. Legislative Council of Maryland, *Report to the General Assembly of 1965* 270. The Judiciary Committee reported favorably to the Council on August 12, 1964 on the proposed Maryland Arbitration Act and stated that

[t]he Committee is approving a draft, submitted by the State Bar Association Committee, which contains *an exclusion for labor disputes.* [*Id.* at 290 (emphasis added).]

The Legislative Council's explanation accompanying the text of the bill in the Council's report to the General Assembly stated in part (italics converted to regular case):

The uniform act repeals several existing Maryland statutes which conflict with the uniform act. An exclusion was placed into the act in Section 1 excluding the applicability of the entire act to arbitration agreements between employers and employees. This was done at the specific request of labor union representatives. [*Id.* at 1.]

This bill was enacted as Chapter 231 of the Acts of 1965 and codified as Art. 7 of the Code.

The change which the General Assembly made from the Uniform Arbitration Act in order to exclude "labor disputes" and so as to give effect to "the specific request of labor union representatives" is now § 3–206(b) of the Courts Article. The Maryland Act expressly "does not apply" to that to which the Uniform Arbitration Act expressly applies. Both the "arbitration agreements" included in the Uniform Arbitration Act and the "arbitration agreement" excluded from the Maryland Act are "between employers and employees or between their respective representatives." If the way in which the Uniform Arbitration Act "covers labor-management agreements to arbitrate" is by express inclusion, it would seem logical that the way in which to exclude "labor-management agreements to arbitrate" is to negative an express inclusion. Indeed, this very drafting technique was recommended by one of the opponents of the scope of the Uniform Arbitration Act as the way to prevent its extension to collective bargaining agreements containing provisions for arbitration. *See* Howard, *The Proposed Uniform Arbitration Act: Yes or No,* 22 Mo.L.Rev. at 244.

■ A contemporaneous practical construction of the 1965 enactment by the Standing Committee on Rules of Practice and Procedure of this Court reflects that the § 3–206 exclusion was viewed as primarily operating on arbitration provisions in collective bargaining agreements. By 1965, the common law rule of revocability had been changed for

agreements to arbitrate contained in collective bargaining contracts governed by the Labor Management Relations (Taft-Hartley) Act of 1947, 29 U.S.C. § 185. In 1957 the Supreme Court of the United States had held that such agreements were specifically enforceable by virtue of § 301 of the Labor Management Relations Act of 1947. *See Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). An action to compel compliance with an agreement to arbitrate, subject to the federal statute, may be brought in the courts of a state. *See Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Effective September 1, 1967 the Maryland Rules were amended in Chapter 1100, Subtitle E, "Arbitration and Award," as recommended by the Rules Committee of this Court. Amended Rule E4 made the procedures of the Maryland Uniform Arbitration Act applicable, by virtue of rule of court, to cases involving arbitration agreements to which that Act was not applicable by its terms. In its 30th Report the Rules Committee observed that "[t]he principal class of arbitrations which may come within Rule E4 are labor arbitrations in cases arbitrable by reason of the federal labor laws." It was foreseen that this situation "would occur if a collective bargaining agreement subject to the federal act did not specify that the Maryland act applies." Committee Note to MD. Rule E4.

McGrow's position essentially is that the words in § 3–206(b) exclude individual employment contracts from the Act whether or not the General Assembly had focused attention on that result. Even if the principal object of the exclusion had been arbitration provisions in collective bargaining agreements, the question is whether that purpose limits the reach of the language employed. We have demonstrated, *supra,* that the language employed in § 3–206 is not so clear and unambiguous as to compel the application for which McGrow contends. Further, adoption of McGrow's position would require construing the Act as

having reversed a statutorily expressed public policy of this State dating back to 1878.

In July 1877 a strike against the Baltimore and Ohio railroad was accompanied by such mob violence that the militia and federal regulars were called upon to restore order.[4] A number of proposals for arbitrating the dispute were advanced.[5] Quite probably as a result of the B & O strike 1878 Md.Laws, ch. 379 was enacted. Sections 2 through 6 of the 1878 enactment remained in effect, without ever having been amended, until 1965. While codified as Md.Code (1957), Art. 7, §§ 1–5 those five sections were repealed by the Maryland Uniform Arbitration Act, 1965 Md.Laws, ch. 231, which was "enacted in lieu thereof, to stand in the place of the sections so repealed...." Section 2 of Chapter 231.

The 1878 enactment provided in part that

[a]ll subjects of dispute arising between corporations, and any person in their employment or service, and all subjects of dispute between employers and employees in any trade or manufacture may be settled and adjusted in the manner hereafter mentioned. [Md.Code (1957), Art. 7, § 1.]

The next section of the 1878 statute dealt with the submission of an existing dispute to arbitration through a procedure utilizing a judge or justice of the peace. Code (1957), Art. 7, § 2. Then § 3 provided:

In all such cases of dispute as aforesaid, as in all other cases, if the parties mutually agree that the matter in dispute shall be arbitrated and determined in a mode different from the one hereby prescribed, *such agreement shall be valid,* and the award and determination thereon

---

4. M. Andrews, *History of Maryland: Province and State* 598–99 (1929); Ammen, *History of Baltimore 1875–1895,* in 1 *Baltimore, Its History and Its People* 250 (C. Hall ed. 1912).

5. Yearley, *The Baltimore and Ohio Railroad Strike of 1877,* 51 Md. Hist.Mag. 188, 210 (1956).

by either mode of arbitration shall be final and conclusive between the parties. [Emphasis added.]

■ Several features of the 1878 statute are of significance to the case at bar. That enactment by its terms applied to a dispute between a corporation and a single employee. The 1878 statute could not have included a future disputes arbitration clause in a collective bargaining contract or an agreement between an employer and a union to submit to arbitration an existing controversy (a submission agreement), because union activity was criminal at that time. It was not until 1884 Md.Laws, ch. 266 that a combination in furtherance of a trade dispute to do an act lawful if done by one person was no longer indictable. Moreover, under former Art. 7, § 3 an agreement between an employer and an employee to arbitrate, at least as to an existing dispute, became enforceable.[6] If McGrow is correct in asserting that all mutual promises for arbitration between an employer and a single employee are excluded from the Maryland Uniform Arbitration Act by § 3–206(b), one consequence would be that a policy dating back to 1878 was overturned as to submission agreements between an employer and a single employee through the repeal by the Act of the 1878 statute.[7] We do not believe the General Assembly

---

**6.** The common law rule was that a party to an arbitration agreement could revoke his agreement prior to award. *See Tomlinson v. Dille,* 147 Md. 161, 167, 127 A. 746, 748 (1925); *Contee v. Dawson,* 2 Bland 264 (1829); *Allegre v. Maryland Ins. Co.,* 6 H & J 408 (1825); 6 C.J.S. *Arbitration* § 49.a (1975). But an award, once rendered, was final and conclusive in the absence of fraud or mistake. *See Continental Milling and Feed Co. v. Doughnut Corp.,* 186 Md. 669, 674, 48 A.2d 447, 449 (1946). Thus, former Art. 7, § 3 which made agreements to arbitrate "valid," meant at least that a promise to arbitrate an existing dispute was irrevocable. McGrow and Wilson have clashed over whether former Art. 7, § 3 applied to agreements to arbitrate future disputes, but it is not necessary that we resolve that disagreement here.

**7.** There are provisions in Md.Code (1957, 1979 Repl.Vol.), Art. 89, §§ 3–11 for the submission to voluntary arbitration of existing disputes involving an employer of ten or more persons. Those statutes contemplate that the initiative for mediation or arbitration will be

intended that result and we shall not construe § 3–206(b) so as to have the Legislature inadvertently back into that result. Because § 3–206 expressly deals both with submission agreements and with future disputes agreements, no distinction between the two types of arbitration agreements can be implied in § 3–206(b). Consequently the reference in § 3–206(b) to "employers and employees" should be read as not including the arbitration agreement between an employer and a single employee in order to preserve the legislative policy originating in 1878, even if that historic policy related only to a submission agreement. Our reading necessarily excludes from § 3–206(b) an agreement between an employer and a single employee to arbitrate future disputes.

In sum, the legislative history of § 3–206(b) reflects that the primary purpose of that Maryland variation from the Uniform Arbitration Act was to exclude arbitration agreements in collective bargaining contracts from the Act. To construe the Act as also excluding arbitration agreements in individual employment contracts would arguably revive the common law rule as to those arbitration agreements when the common law rule had been revoked in 1878, at least in part as to those agreements. Application of the rule of interpretation under which the plural includes the singular is not reasonable in the context here. We hold that § 3–206(b) of the Courts Article does not apply to an agreement to arbitrate included in an employment contract between an employer and a single employee. Consequently the McGrow-Wilson agreement to arbitrate is governed by § 3–206(a) of the Courts Article and is specifically enforceable.

McGrow also argues that the judgments of the courts below should be affirmed because the controversy with

---

taken by the Commissioner of Labor and Industry in a dispute "between the employer and its employees, which may result in a strike or lockout...." *Id.* at § 3. Neither party to the instant appeal argues that these sections apply to Wilson's individual employment contract.

Wilson is beyond the scope of the arbitration clause. That clause, in relevant part, states that

> [a]ny controversy or claim arising out of *or relating to* this Agreement, *or the breach thereof,* shall be settled by arbitration in Maryland.... [Emphasis added.]

In its complaint McGrow alleges acts of disloyalty by Wilson "while serving as an employee, officer and director of McGrow...." Because the complaint implicates Wilson's relationship to McGrow as an officer and as a director, while the agreement referred to in the arbitration clause relates only to Wilson's relationship as an employee, McGrow says the dispute is not arbitrable.

Implicit in McGrow's argument is the assumption that, where a corporate employer sues one who is simultaneously an employee, officer and director of the employer for alleged malefactions involving preparation for post-employment competition with the employer, the duty of loyalty can be neatly dissected into compartments representing in the context the duty owed respectively as employee, as officer and as director. Even if we accept this assumption, *arguendo,* the entire controversy is arbitrable.

The relationship of employer and employee gives rise to a duty of loyalty, and the arbitration clause in Wilson's employment contract applies to any controversy relating to the employment agreement or breach thereof. It is a clause of the broad type. Judge Davidson, writing for the Court of Special Appeals in *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 321, 320 A.2d 558, 566 (1974), *rev'd on other grounds,* 274 Md. 307, 334 A.2d 526 (1975) stated the rule applicable here.

> Where there is a broad arbitration clause, calling for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly and specifically excluded. *McCandliss v. Ward W. Ross, Inc.,* 45 Mich.App. 342, 206 N.W.2d 455, 457 (1973); *Michigan Mutual Liability Co. v. Graham,* 44 Mich.App. 406, 205 N.W.2d 289, 291 (1973); *Maryland Casualty Co. v. McGee,*

32 Mich.App. 539, 189 N.W.2d 44, 48 (1971); *Grover-Diamond Ass'n v. American Arbitration Ass'n,* [297] Minn. [324], 211 N.W.2d 787, 790 (1973). [Footnotes omitted.]

■ The McGrow-Wilson broad arbitration clause does not exclude corporate employer claims based on the duty of loyalty as officer and director in contradistinction to that as employee.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT FOR REMAND TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY McGROW, PRIDGEON & COMPANY, P.A.