SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| NORTH VALLEY EMERGENCY SPECIALISTS, L.L.C., an Arizona Limited Liability Company, ) ) ) | Arizona Supreme Court No. CV-03-0279-PR |
| ) | |
| Petitioners, ) | Court of Appeals Division One |
| ) | No. 1 CA-SA 03-0137 |
| v. ) | |
| ) | Maricopa County Superior |
| THE HONORABLE MARK R. SANTANA, ) JUDGE OF THE SUPERIOR COURT OF ) THE STATE OF ARIZONA, in and for ) the County of Maricopa, ) | Court No. CV 2002-015581 |
| ) | **O P I N I O N** |
| Respondent Judge, ) | |
| ) | |
| TEAM PHYSICIANS OF ARIZONA, P.C., ) an Arizona professional ) corporation d/b/a EMERGENCY ) PHYSICIANS, EPI, ) | |
| ) | |
| Real Party in Interest. ) | |
| ) | |
| _____) | |

Petition for Review from Special Action
Court of Appeals, Division One
No. 1 CA-SA 03-0137

Petition for Special Action from the
Maricopa County Superior Court
No. CV 2002-015581
The Honorable Mark R. Santana, Judge

**VACATED AND REMANDED**
_____

Lubin & Enoch, P.C.                                              Phoenix
     By:  Stanley Lubin
     And: Nicholas J. Enoch
Attorneys for Petitioners

Robbins & Green, P.A.                                    Phoenix
      By:  Philip A. Robbins
      And: Janet B. Hutchison
           James O. Ehinger
Attorneys for Real Party in Interest
_____

**R Y A N**, Justice

¶1        Arizona's arbitration act, Ariz. Rev. Stat. ("A.R.S.")
§§ 12-1501 to -1518 (2003), provides that the act has "no
application to arbitration agreements between employers and
employees or their respective representatives."  A.R.S. § 12-
1517.  We granted review to determine whether Arizona Revised
Statutes section 12-1517 applies to all arbitration agreements
between employers and employees or only those found in
collective bargaining contracts.  We hold that § 12-1517 exempts
from the Arizona Uniform Arbitration Act ("Act") all arbitration
agreements between employers and employees.

                              **I.**

¶2        Team Physicians of Arizona, Inc. ("TPA"), provides
medical services to hospital emergency departments.  To furnish
these services, TPA employs physicians and physician assistants.
Each of the physicians and physician assistants employed by TPA
entered into an employment agreement containing essentially the
same arbitration clause requiring "any and all disputes" arising
out of the employment agreement to "be settled by arbitration."
In 2002, employees left TPA and formed North Valley Emergency

Specialists, L.L.C. ("NVES"). NVES provides emergency medical services to hospitals in competition with TPA.

¶3 TPA filed a lawsuit in superior court against NVES and numerous individual physicians and physician assistants, seeking damages and injunctive relief. TPA eventually requested that the individual defendants submit their cases to arbitration in accordance with the arbitration clauses. The individual defendants refused to submit to arbitration.

¶4 TPA filed a motion to compel arbitration under A.R.S. § 12-1502, which provides that a court shall order arbitration when there is a valid arbitration agreement between the parties.[1] In response, the defendants argued that the trial court did not have the statutory authority to grant TPA's motion because A.R.S. § 12-1517 exempted employment contracts from the Act. The trial court ruled that § 12-1517 was intended to apply only to collective bargaining agreements, stayed the lawsuit, and ordered that the parties arbitrate the damage claims.

¶5 The defendants filed a petition for special action in the court of appeals, which declined jurisdiction. The

---

[1] Arizona Revised Statutes § 12-1501 states the following: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable . . . ." Section 12-1502(A) gives the court the power to order arbitration when an agreement described in § 12-1501 exists.

defendants then petitioned this court for review, asking us to reverse the order compelling arbitration. We accepted review because many employment agreements now contain arbitration clauses and because no Arizona appellate court has ruled on the issue. We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution, A.R.S. § 12-120.24 (2003), and Arizona Rule of Civil Appellate Procedure 23.

## II.

¶6    TPA asks us to uphold the trial court's interpretation of A.R.S. § 12-1517 for several reasons.[2] First, it argues that, based upon the legislative history of Arizona's arbitration statutes, the current version of the Act was intended to exempt only arbitration agreements in collective bargaining contracts. Second, TPA contends that because the Act is based upon a model or uniform act, we should assume the legislature intended to

---

[2]    In its supplemental brief, citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), TPA argues that the Federal Arbitration Act ("FAA") preempts the Arizona Arbitration Act because "all forms of employment agreements . . . are subject to compulsory arbitration under the [FAA]." TPA raised this argument neither in the trial court nor in its petition for special action in the court of appeals. Therefore, the issue is waived. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977). Moreover, TPA did not ask the trial court to make any finding that the contracts in this case involve interstate commerce. *See Ex parte Webb*, 855 So. 2d 1031, 1035-36 (Ala. 2003); *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 363 (S.C. 2001); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (interpreting the term "involving commerce" to mean "affecting commerce"); *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 51, ¶ 13, 977 P.2d 769, 773 (1999) (discussing the scope of the FAA).

place the same construction on the Act as did the drafters of the uniform act. Third, TPA claims that interpreting § 12-1517 as exempting all arbitration agreements between employers and employees from Arizona's arbitration act contravenes the legislature's policy of favoring arbitration. Finally, TPA contends that a grammatical construction of § 12-1517 does not support the exemption of all employer-employee arbitration agreements from the Act.

¶7     The defendants, on the other hand, contend that the plain language of A.R.S. § 12-1517 precludes all arbitration agreements between employers and employees from being subject to compulsory arbitration. It argues that TPA's assertion that the legislature intended to exclude from compulsory arbitration only collective bargaining agreements that contain arbitration clauses is clearly contrary to the language the legislature used.

¶8     Because this case presents a question of statutory interpretation, our review is de novo. *See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

### III.

¶9     A statute's language is "the best and most reliable index of a statute's meaning." *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993) (quoting *Janson v. Christensen,*

167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)).  In addition, "[i]f the language is clear, the court must 'apply it without resorting to other methods of statutory interpretation,' unless application of the plain meaning would lead to impossible or absurd results."  *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003) (quoting *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994)).  The clear language of § 12-1517 leads us to conclude that an arbitration agreement between an employer and employee is not subject to the provisions of the Act, whether the agreement is found in a contract between a single employer and a single employee or in a collectively bargained contract.

### A.

¶10     Despite the clear language of A.R.S. § 12-1517, TPA, tracing the history of compulsory arbitration in Arizona, first maintains that the legislature intended the present version of the exemption for employer-employee arbitration agreements in the Act to exclude only arbitration agreements contained in collective bargaining contracts.  It therefore contends that the agreements here are subject to arbitration.  We conclude that the legislative history does not compel the result TPA urges.

¶11     Before 1929, title II, paragraph 7, of the Revised Statutes of Arizona (1887) permitted the parties to agree to submit any "right of action . . . to arbitration."  Subsequent

versions of this statute continued to permit parties to submit their claims to arbitration. *See* Rev. Code Ariz. § 4294 (1928); Rev. Stat. Ariz. § 1480 (1913); Rev. Stat. Ariz. tit. III, ¶ 295 (1901). Under these statutes, however, parties could not be compelled to arbitrate their claims. *See San Francisco Sec. Corp. v. Phoenix Motor Co.*, 25 Ariz. 531, 538, 220 P. 229, 231-32 (1923). In 1929, the legislature replaced the permissive arbitration statute with a compulsory arbitration system. *See* 1929 Ariz. Sess. Laws, ch. 72, § 1 (codified at Rev. Code Ariz. § 4301a (Supp. 1934)). But § 4301a specifically excluded collective bargaining contracts from being subject to compulsory arbitration. That statute declared "that the provisions of [the arbitration] act shall not apply to collective contracts between employers and employees." Subsequent editions of the Act continued to exempt collective contracts from compulsory arbitration. *See, e.g.*, A.R.S. § 12-1509(B) (1954); Ariz. Code § 27-309 (1939).

¶12 In 1955, however, the National Conference of Commissioners on Uniform State Laws promulgated a revised version of the Uniform Arbitration Act ("UAA"). Among the concerns the commissioners had was the practice in many states, including Arizona, of exempting collectively bargained "labor-management" contracts from compulsory arbitration. *See* UAA, prefatory note at 2. To rectify the perceived problem, section

1 of the revised UAA provided that the act also applied "to arbitration agreements between employers and employees or between their respective representatives [unless otherwise provided in the agreement]."

¶13    In 1962, the Arizona legislature adopted the revised UAA.  1962 Ariz. Sess. Laws, ch. 108, § 2.  But in adopting the Act, the legislature did not include the language found in section 1 of the UAA, which would have made Arizona's arbitration act applicable to all employer-employee arbitration agreements, whether collectively bargained or otherwise. Instead, the legislature took the language from section 1 of the UAA, cast it in the negative, and included it as a separate provision, now found in A.R.S. § 12-1517.  Thus, unlike the UAA, Arizona's arbitration act provides that it has "*no* application to arbitration agreements between employers and employees or their respective representatives."  A.R.S. § 12-1517 (emphasis added).

¶14    We presume that by amending the language of section 1 of the revised UAA, the legislature intended to change its meaning.  *See State v. Garza Rodriguez*, 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990) ("[W]e presume that by amending a statute, the legislature intends to change the existing law.").  If the legislature had wanted to continue to exclude from the Act only those employer-employee arbitration agreements that were

collectively bargained, as it had done in the past, no change in statutory language would have been needed.

## B.

¶15     TPA next argues that when a statute is based on a model or uniform act, the courts will "assume that the legislature 'intended to adopt the construction placed on the act by its drafters.'"  *UNUM Life Ins. Co. v. Craig*, 200 Ariz. 327, 332, ¶ 25, 26 P.3d 510, 515 (2001) (quoting *State v. Sanchez*, 174 Ariz. 44, 47, 846 P.2d 857, 860 (App. 1993)).  But our legislature specifically rejected the portion of the revised UAA that made it applicable "to arbitration agreements between employers and employees or between their respective representatives."   As such, the rule that the legislature "intended to adopt the construction placed on the act by its drafters," *id*., has no application to A.R.S. § 12-1517, which is a *departure* from the UAA.   Thus, we cannot assume that the legislature intended to exclude only arbitration agreements in collective bargaining contracts from the Act simply because the Act was modeled after the revised UAA.

## C.

¶16     TPA's third contention posits that an interpretation of A.R.S. § 12-1517 that excludes all employer-employee arbitration agreements is contrary to the purposes of the Act because it would be inconsistent with the legislature's policy

- 9 -

of favoring arbitration. Although we agree Arizona has a strong public policy favoring arbitration, *see S. Cal. Edison Co. v. Peabody W. Coal Co.,* 194 Ariz. 47, 51, ¶ 11, 977 P.2d 769, 773 (1999), the plain language of A.R.S. § 12-1517 carves out an exception to that policy. A straightforward reading of the statute reveals that § 12-1517 specifically exempts employer-employee arbitration agreements from compulsory arbitration under the Act; therefore, TPA's argument fails.

**D.**

¶17    TPA next contends that because A.R.S. § 12-1517 refers to "employers and employees" in the plural, the statute must be interpreted as applying only to collective bargaining agreements, and not to arbitration agreements between a single employer and a single employee. It cites *Wilson v. McGrow, Pridgeon & Co.*, 467 A.2d 1025, 1031 (Md. 1983), in support of this contention.

¶18    We decline to adopt TPA's interpretation of A.R.S. § 12-1517 for two reasons. First, under Arizona's rules of statutory construction, "[w]ords in the singular number include the plural, and words in the plural number include the singular." A.R.S. § 1-214(B) (2002). And unless the legislature expresses "'manifest intent' to the contrary," a plural noun will be construed to include the singular of that noun. *Homebuilders Ass'n of Cent. Ariz. v. City of Scottsdale*,

186 Ariz. 642, 649, 925 P.2d 1359, 1366 (App. 1996). Accordingly, under our rules of statutory construction, § 12-1517 plainly includes arbitration agreements between a single employer and a single employee as well as arbitration agreements in collectively bargained contracts.

¶19     Second, we find TPA's reliance on *Wilson* misplaced. Maryland's Uniform Arbitration Act, like Arizona's, has a provision exempting arbitration agreements between employers and employees. That provision states, in part, the following: "This subtitle does not apply to an arbitration agreement between employers and employees or between their respective representatives . . . ." Md. Code Ann., Cts. & Jud. Proc. § 3-206(b) (1974).

¶20     Like Arizona, Maryland has a rule of statutory interpretation that declares "[t]he singular always includes the plural, and vice versa, except where such construction would be unreasonable." Md. Ann. Code art. 1, § 8 (1957). But the *Wilson* court questioned whether this rule of statutory interpretation was applicable because when the entire Maryland Code was revised, many terms were changed from the plural to the singular to reflect a uniform style, 467 A.2d at 1027 (citing Revisor's Note to Md. Code (1974) (stating that "[t]he only changes made are in style")), but the plural of the words "employers" and "employees" remained in the Maryland Uniform

Arbitration Act, along with the singular of the word "agreement." *Id*. The court noted that had the language been changed to the singular — employer and employee — an inference could be drawn "that conversion to the singular in conformity with the code revision style guideline would not be a change in style, but one of substance." *Id*. (citing Md. Code Ann., Cts. & Jud. Proc. § 3-206(b)). Noting that the revisors of the Maryland Code elected not to make this change, but instead retained the plural "employers" and "employees," the court questioned whether the statute intended to exclude an arbitration agreement between an individual employer and individual employee. *Id*.

¶21 Consequently, the *Wilson* court looked to the legislative history of the Maryland Uniform Arbitration Act. *See id*. at 1028-29. The court pointed out that, in adopting the UAA, the Maryland legislature, at the urging of labor union representatives, specifically intended to exclude the Maryland Uniform Arbitration Act from applying to arbitration agreements in collective bargaining contracts, but not other employer-employee contracts. *Id*. As a result, the court concluded "that the primary purpose of that Maryland variation from the [UAA] was to exclude arbitration agreements in collective bargaining contracts from the Act." *Id*. at 1031.

¶22	We distinguish *Wilson* on two bases.  First, as stated above, Arizona's rules of statutory construction provide that "[w]ords in the singular number include the plural, and words in the plural number include the singular."  A.R.S. § 1-214(B).  Unlike the legislative history in Maryland, Arizona's legislative history does not indicate that we should depart from that rule.  Second, and more important, we conclude that the way in which our legislature adopted the language found in A.R.S. § 12-1517, discussed *supra* part III(A), demonstrates that it had intended a result contrary to the result reached in *Wilson*.  For these reasons, we find *Wilson* unpersuasive.

**E.**

¶23	TPA also argues that under the last antecedent rule, the term "their respective representatives" applies only to "employees."  Thus, according to TPA, A.R.S. § 12-1517 "must be read to refer to labor-management agreements, rather than to individual employment contracts."  We determine that the last antecedent rule does not apply to § 12-1517.

¶24	"The last antecedent rule is recognized in Arizona and requires that a qualifying phrase be applied to the word or phrase immediately preceding as long as there is no contrary intent indicated."  *Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.*, 165 Ariz. 31, 34, 796 P.2d 463, 466 (1990).  But "[t]he last antecedent rule is not inflexible and it will not be

- 13 -

applied where the context or clear meaning of a word or phrase requires otherwise." *Id.*

¶25     Section 12-1517 expressly uses the phrase "respective representatives." "Words and phrases shall be construed according to the common and approved use of the language." A.R.S. § 1-213 (2002). The word respective is commonly defined as "[r]elating or pertaining to two or more persons or things regarded individually." The American Heritage Dictionary 1107 (1979). If the statute had read "employees or their representatives," TPA's argument might prevail. But the word "respective" refers to two or more persons or things. Therefore, considering the context and the clear meaning of the phrase "respective representatives," we conclude that the phrase relates equally to both employers and employees.

¶26     In addition, the use of the word "or" signals that the last antecedent rule was not meant to apply. Plainly read, the disjunctive provision in § 12-1517 works to preclude enforcement of arbitration clauses between the following: an employer and an employee, an employer and an employee representative, an employer representative and an employee, and an employer representative and an employee representative. Thus, we decide that the last antecedent rule does not apply to A.R.S § 12-1517.

¶27     Finally, we reject the trial court's reasoning that the absence of a comma after the word "employees" in the phrase

"employees or their respective representatives" means "that the reference to 'representatives' is used in the conjunctive, so that [A.R.S. § 12-1517] must be read as referencing employers on the one hand and 'employees or their respective representative' on the other." The fact that the legislature did not use a comma after the word "employees" does not affect the usual and common meaning of the word "respective" as used in § 12-1517. Thus, plainly read, § 12-1517 applies to arbitration agreements between an employer and employee, whether such agreements are in individual contracts or collectively bargained contracts.

## IV.

¶28     In sum, the plain language of A.R.S. § 12-1517 exempts all employer and employee employment agreements from the provisions of Arizona's arbitration act.[3] Accordingly, the trial court erred in ordering that this matter proceed to arbitration.

¶29     Citing A.R.S. §§ 12-341 (2003) and 12-341.01(A) (2003), the defendants request an award of attorneys' fees and costs. We grant the request. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 393-94, 710 P.2d 1025, 1048-49 (1985).

---

[3]     Neither party argued whether the arbitration clauses are enforceable as a common-law contract term. Nor did they argue that an employer and an employee can agree to engage in binding arbitration without the benefit of the statute. Therefore, we do not decide whether these types of agreements are enforceable under the common law.

**V.**

¶**30**     For the foregoing reasons, we vacate the order of the trial court that compelled arbitration and remand this matter to that court for further proceedings consistent with this opinion.

_____
Michael D. Ryan, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Rebecca White Berch, Justice

_____
Andrew D. Hurwitz, Justice