**AMALGAMATED TRANSIT UNION,
DIVISION 1491**

v.

**TENNESSEE TRAILWAYS, INC.**

Civ. A. No. 7843.

United States District Court,
E. D. Tennessee, N. D.

Aug. 15, 1972.

E. Ray Large, Skinner, Large & Corley, Birmingham, Ala., Frank L. Flynn, Jr., Knoxville, Tenn., for plaintiff.

Charles D. Snepp, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

The plaintiff, Amalgamated Transit Union, Division 1491, brings this action under Section 301 of the Labor-Management Act, 29 U.S.C. § 185. He contends that Tennessee Trailways, Inc., the defendant herein, has refused to submit to arbitration two separate grievances as provided for in the collective bargaining agreement, and asks this court to grant a mandatory injunction requiring the defendant to arbitrate these grievances. The defendant argues that neither of these alleged grievances are subject to

the arbitration clause in the contract. Both parties have moved to dismiss and/or for summary judgment.

■ The first alleged grievance that plaintiff argues is subject to arbitration deals with the amount of pay given Truman E. Thomas for work he did on December 17, 18, and 19 of 1971. Plaintiff contends that Thomas performed work on these days equivalent to that of a mechanic class "A" although Thomas was classified and paid for this work as a mechanic class "B", his usual work classification. Defendant denies these allegations, but argues that even if true it is not required to submit this type of dispute to arbitration under the collective bargaining agreement. The arbitration clause (section 108) of the agreement states:

"If an employee feels that he has a grievance concerning his discharge or discipline or the interpretation or application of any of the terms or provisions of this Agreement. . .."

This provision only requires the defendant to arbitrate questions of discharge, discipline, *interpretation* or *application* of the terms or provisions of the agreement. This grievance is not concerned with discharge or discipline; therefore, the question is what terms or provisions are being applied or need interpretation in regard to this grievance such that the defendant is required to arbitrate them. The plaintiff points to two provisions—sections 318 and 320. Section 318 provides that:

"Maintenance employees who feel that they are being abused or mistreated on work assignments shall treat same as a grievance."

However, plaintiff does not argue that Truman Thomas was being abused in regard to his "work assignment," he argues that he was not paid sufficiently for the work he allegedly did. The remaining section cited by the plaintiff, section 320, sets out the base pay levels in relation to an employee's job classification. To argue that this section is involved in this grievance would be to say that anytime a dispute was tied to wages, no matter how indirectly, this section was being applied. We do not read sections 320 and 108 as having this broad a function. Nowhere in section 320 is there the slightest indication that this type of dispute was contemplated in that provision.[1] There is not, therefore, a provision in this contract that is being applied or a provision that requires interpretation in relation to this grievance. See United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Local Union No. 584, 359 F.2d 598 (2nd Cir., 1966); Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., 341 F.2d 715 (6th Cir., 1965). Therefore, this is not a grievance subject to arbitration.

The second alleged grievance concerns the priority in recalling furloughed employees over new employees. Section 113 of the contract provides that:

"When the Company reduces forces, the employees shall be furloughed in the reverse order of their seniority within their classification; and they shall retain all seniority rights and privileges.

"Employees furloughed will be privileged to work elsewhere and retain and accumulate their seniority. Each shall maintain with the Company his correct mailing address. When forces are restored, furloughed employees will be called back to service in their seniority order according to the following procedure:

"The Company will advise each employee to be recalled by registered United States Mail, return receipt requested. A copy of such recall notice will be furnished the Union; and employees receiving notice of recall will immediately acknowl-

1. The plaintiff, union, does not raise this argument explicitly in his brief, but since he has raised section 320 as a section involved in this dispute we have resolved this question.

edge receipt of same by registered United States Mail, return receipt requested, advising the Company of the date he will be available for service, which date will be within ten (10) days of the recall notice. Employees having other employment being recalled for short periods of work may be given permission to reject same without loss of seniority, if sufficient other men are available. Furloughed employees failing to comply with these instructions will forfeit seniority rights and be considered no longer employees of the Company. When furloughed employees are recalled, they shall not be again furloughed for at least thirty (30) days."

Plaintiff contends that James E. Darnell was furloughed by the defendant in the fall of 1971 and filed a grievance against the defendant for working new employees on November 27 and 28, 1971, rather than recalling him. The defendant denies all of the plaintiff's allegations and avers that on December 15, 1971 its President made his written decision, denying this particular grievance and mailed it to the plaintiff. That it wasn't until February 14, 1972 (60 days) after exhaustion of the grievance procedure required by the agreement rather than the 10 days prescribed by § 108 of the agreement that plaintiff notified defendant of its desire to arbitrate.

■■ The defendant does not seem to argue that this grievance was not subject to arbitration (which it was); rather he contends that his contractual obligation to arbitrate was expressly conditioned upon the plaintiff's written notice or request for arbitration being served upon the defendant within the 10-day period as provided for in § 108 of the agreement. It further argues that this time limitation was not a procedural point but substantive in that it concerns whether the defendant contracted and agreed to arbitration on terms different from those in the agreement. A similar contention was raised in International U., U. A. A. and A. I. W. v. Folding Carrier Corp., 422 F.2d 47 (10 Cir., 1970). In that case the union had failed to comply with the three step procedure in presenting a grievance for arbitration and had not sufficiently set out in the notice of the grievance the requisite information as required by the arbitration clause. The company's argument that its promise to arbitrate was expressly conditioned on prior compliance of these steps was rejected. Substantive arbitrability the court stated "is concerned with whether the dispute relates to a subject matter which the parties have contractually agreed to submit to arbitration. This question is to be decided by the courts because no party has to arbitrate an issue unless he has consented." The Court quoted the Supreme Court case of John Wiley & Sons v. Livington, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) to the effect that procedural arbitrability encompasses such questions as "whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused or whether the unexcused failure to follow them avoids the duty to arbitrate." This Court concluded that the manner of presentation and sufficiency of the statements are matters of procedure to be determined by the arbitrator. See also, Tobacco Wkrs. Int. U., Local 317 v. Lorillard Corp., 448 F.2d 949 (4 Cir., 1971) (rejecting the argument that *John Wiley* required the intertwining of substantive and procedural questions in order to require the arbitrator to first decide the question); Amalgamated Meat Cut., etc., L. 405 v. Tennessee Dr. Beef Co., 428 F.2d 797 (6th Cir., 1970).

It is, therefore, ordered that the first cause of action involving Truman Thomas be dismissed, and the second cause of action involving James Darnell be remanded to arbitration.