MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
*v.* BALTIMORE CITY FIRE FIGHTERS,
LOCAL 734, IAFF, AFL-CIO, CLC

[No. 878, September Term, 1980.]

*Decided June 4, 1981.*

The cause was argued before MORTON, MOYLAN and MOORE, JJ.

*Eileen A. Carpenter, Assistant City Solicitor,* with whom were *Benjamin L. Brown, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor,* and *Elise Jude Mason, Chief Solicitor,* on the brief, for appellants.

*William H. Engelman,* with whom were *Harriet E. Cooperman* and *Kaplan, Heyman, Greenberg, Engleman & Belgrad, P.A.* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

The defendant-appellant, Mayor and City Council of Baltimore ("City") appeals from an order of the Superior Court of Baltimore City in a mandamus action granting summary judgment in favor of the plaintiff-appellee, Baltimore City Fire Fighters Local 734 ("Union"). The effect of the court's order was to require the City to submit to arbitration the question of its entitlement to make deductions from the paychecks of certain employees for overpayments of compensation for overtime, after the City had notice of its error but continued to overpay. The critical issue is whether there existed an agreement between the City and the Union to arbitrate the dispute. We hold there was not. The City's demurrer should have been sustained. We, therefore, reverse.

I

The facts as gleaned from the pleadings and affidavits filed below may be summarized as follows: The Union is the certified collective bargaining representative of all uniformed employees of the Baltimore City Fire Department below the rank of Fire Lieutenant. At all times applicable herein, the Union and the City were governed by a collective bargaining agreement referred to as a Memorandum of Understanding ("Memorandum") which included customary provisions concerning wages, hours, working conditions, and procedures for settling grievances.

On or about October 16, 1979, and prior thereto, the City issued paychecks to a number of fire department employees from each of which the sum of $10 had been deducted. The deductions represented partial recoupments for overpayments by the City to the employees for overtime worked. We are told that the Central Payroll Division of the

City discovered, in November 1978, that an incorrect rate of overtime pay had been used for certain employees, but that the overpayments continued until April, 1979.[1]

On October 18, 1979, pursuant to the "Grievance and Arbitration Procedure" contained in Article VI of the Memorandum, the Union filed a grievance protesting that the $10 deductions were "unauthorized, wrongful and improper." The provisions of Article VI were in pertinent part as follows:

"A. Subject to any limitations of existing law, *any grievance defined in the Municipal Employee Relations Ordinance* (Section 120 (f)) *as a dispute concerning the application or interpretation of the terms of this Memorandum of Understanding or a claimed violation, misinterpretation or misapplication of the rules or regulations of the Employer affecting the terms and conditions of employment may be settled in the following manner:*

*Step 1.* Within fifteen (15) calendar days of the date of the grievance or knowledge by the affected employee of the occurrence giving rise to the grievance, the employee, accompanied by an authorized representative of the Union, shall orally discuss the grievance with his immediate officer. The aggrieved employee and representative shall attempt to resolve the complaint with all parties involved. In the event the grievance is not resolved at this level, the employee and his Union representative shall present the grievance in writing to the Senior Officer or House Captain. If the grievance is not resolved at this level within three days, the House Steward and Battalion Representative shall present the grievance in writing to the Battalion Chief.

*Step 2.* If the grievance is not satisfactorily resolved within three days of presentation to the Battalion Chief, the aggrieved employee shall forward the grievance, in writing, through the Battalion Vice President to the Deputy Chief.

---

1. The Union does not deny that the overpayments were made by the City.

Within seven calendar days of the presentation, the Deputy Chief shall hold a meeting with the appropriate Union representative to discuss the grievance.

*Step 3.* If the grievance has not been satisfactorily resolved in Step 2, a written grievance may be taken to the Chief of the Fire Department, or his designee, within ten calendar days following the completion of Step 2. The Chief shall meet and discuss the grievance with the appropriate Union official within ten calendar days of receipt of the grievance. A written answer to the grievance shall be submitted to the employee and the Union President within seven calendar days thereafter. Any grievance concerning the direct action of the Chief of the Fire Department or the Board of Fire Commissioners, or any grievance which affects large numbers of employees may be commenced in Step 3.

*Step 4.* If the grievance has not been satisfactorily resolved in Step 3, the grievance may be taken to the Board of Fire Commissioners by the Union President within ten calendar days following the completion of Step 3. Within five calendar days of receipt of the grievance, the Board of Fire Commissioners shall meet with the Union Steward, the President of the Union and the aggrieved employee to discuss the grievance. The Board of Fire Commissioners shall respond in writing to the President of the Union within ten calendar days thereafter.

*Step 5. If the grievance has not been satisfactorily resolved in Step 4 and the Union's Executive Board finds the grievance to have merit, a review by an impartial arbitrator may be requested* within seven calendar days following the completion of Step 4, by filing a written notice with the Labor Commissioner.

(a) The parties shall select an arbitrator; if they are unable to make a selection, then they shall select a name from a panel obtained from the Federal Mediation and Conciliation Service.

(b) The arbitrator's decision shall be final and binding." (Emphasis added.)

During ensuing discussions prior to Step 5, the Union's position was that recoupment by the City for the overpayments was permissible only for the amounts paid *before* the City was notified of its error, and that any deductions for overpayments thereafter were impermissible. The dispute was not resolved through the first three steps of the procedure. The Board of Fire Commissioners ruled at Step 4 that there did not appear to be a "grievable" issue and stated that the matter "can therefore be considered resolved."

Pursuant to Step 5, the Union thereupon filed a written notice with the Labor Commissioner requesting that the matter be submitted to an arbitrator. On November 9, 1979, the Commissioner responded that the matter was "nongrievable" and therefore, refused to submit it to arbitration. On November 30, 1979, the Union filed its bill of complaint for a writ of mandamus to compel arbitration. It also filed a motion for summary judgment. The City demurred on the ground that there was no grievance within the meaning of that term as defined in the Memorandum.

The court granted the Union's motion for summary judgment and overruled the City's demurrer. In a Memorandum Opinion, the court stated in part:

> "It is the opinion of this Court that to allow the Defendants to determine what is and what is not a "grievable issue" once the procedures delineated in Article VI have begun would destroy the very purpose of the Article, particularly Step 5. Giving the Defendants such authority would allow them to determine unilaterally what issues would go before an arbitrator since this determination that an issue is "non-grievable" could obviate the determination by an arbitrator what is or is not a grievable issue. Moreover, the language of Article VI, Step 5 clearly states that the only substantive criteria that must exist in order to have an arbitrator appointed is: (1) The grievance has not been satisfactorily resolved; and (2) the Union's Executive Board finds the

grievance meritorious. *Therefore, it is the Plaintiff, not the Defendants, who determine what is a 'grievable issue' suitable for arbitration once the first four steps of Article VI have been completed."* (Emphasis added.)

The court then ordered that the "grievance in question" be submitted to arbitration "as provided in Step 5 of Article VI of the Memorandum of Understanding."

## II

The Union correctly observes in its brief that the fundamental question presented is whether a "grievance" existed. It states:

"The sole prerequisite for resolving a dispute in accordance with the Grievance and Arbitration Procedure is that the matter be a cognizable 'grievance' under the Memorandum of Understanding and the Ordinance. Once a determination has been reached that the dispute is a 'grievance,' arbitration, as prescribed by the Memorandum, must be ordered."

The difficulty we find with the disposition made by the trial court, however, is its holding that the Union had the right to determine at Step 5,[2] what is a "grievable issue." This is not the prerogative of either party to a collective bargaining agreement providing for arbitration of disputes. The pivotal question is, in the words of the Supreme Court, "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 567-8, 80 S. Ct. 1343, 1346, 4 L. Ed. 2d 1403 (1960). Where the parties are, as here, in disagreement on the very

---

2. A labor-management dispute, although not compulsorily arbitrable, may be subject to the grievance procedures enumerated in the agreement. Local 210, International Printing Pressmen and Assistants' Union v. Times-World Corporation, 381 F. Supp. 149 (W.D. Va. 1974).

question whether there exists an agreement to arbitrate the subject matter of the dispute, the resolution of that question is for the court in an appropriate proceeding.[3] *Id.*

An important guideline in the judicial process was expressed by Justice Douglas in *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960), the second case in the Steelworkers trilogy: [4]

> "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

It is also clear, however, that arbitration of labor disputes is favored. In *Warrior and Gulf,* the Court went on to state:

> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Footnote omitted.)

*Id.* at 582-83, 80 S. Ct. at 1353. *See Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md. App. 307, 321, 320 A.2d 558, 566 (1974), *rev'd on other grounds,* 274 Md. 307 (1975).

Turning to the relevant provisions in the Memorandum concerning arbitration in this case, it will be seen that "grievance" is defined as

---

**3.** In interpreting the Uniform Arbitration Act, Md. Cts. & Jud. Proc. Code Ann. §§ 3-201 *et seq.,* this Court has held that when the language of the contract is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement, the question should be left to the decision of the arbitrator. Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc., 21 Md. App. 307, 320 A.2d 558 (1974), *rev'd on other grounds,* 274 Md. 307 (1975).

**4.** United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

"(a) a dispute concerning the application or interpretation of the terms of the Memorandum

*or*

(b) a claimed violation, misinterpretation or misapplication of the rules or regulations of the employer affecting the terms and conditions of employment."

Further, the phrase " terms and conditions of employment" is defined in Section 120 (k) of the Municipal Employee Relations Ordinance as "salaries, wages, hours and other matters relating to employee benefits and duties, such as, but not limited to, holidays, pensions and vacations."

Does the dispute, in this appeal, concerning the City's recoupment of overtime compensation erroneously paid, fall within either of the contractual definitions of "grievance?" The Union paints with a broad brush and argues that this dispute falls within either aspect of the definition. It contends:

"The dispute in question, that is the unauthorized, wrongful and improper deductions from employee paychecks to represent alleged overpayment for overtime worked, involves a variety of subject matters covered by the substantive provisions of the Memorandum. *Article IX, Overtime, establishes procedures for overtime work and sets the applicable rate of pay for said work. Article XIII of the Memorandum concerns the payment of salaries to employees.* Surely allegations of overpayment of overtime and deductions from periodic paychecks would necessarily involve a review and analysis of these overtime and salary provisions, as well as employee rights thereunder."

The City poses the issue more narrowly:

"The question of whether or not the Defendant Mayor and City Council of Baltimore, is estopped to

> recoup overpayments after it has received notice that overpayments were made involves factual and legal determinations neither within the purview of the aforementioned Memorandum of Understanding nor the authority of an arbitrator appointed pursuant to the procedure outlined therein. Plaintiff has cited no section of the Memorandum of Understanding which purportedly covers a question of this nature."

In our judgment, the instant dispute is not a "grievance" as defined by the Memorandum, and therefore, the court erred in ordering the City to submit it to arbitration. With respect to the first prong of the definition of grievance, there is not present herein an *application* or *interpretation* of the *terms* of the Memorandum. The real issue here involves the effect, if any, of notice to the City that it was making overpayments to certain employees of the Union. We have read the provisions in the Memorandum dealing with salary and overtime and find nothing therein remotely bearing upon that question. *See Local 210, International Printing Pressmen and Assistants' Union v. Times-World Corporation,* 381 F. Supp. 149 (W.D. Va. 1974) (pay increases for supervisory personnel not controlled by collective bargaining agreement and employer's action in granting increases did not create an arbitrable dispute); *Amalgamated Transit Union v. Tennessee Trailways, Inc.,* 366 F. Supp. 971 (E.D. Tenn. 1972) (Class B mechanic's claim to Class A mechanic's pay for temporary assignment to Class A work not an arbitrable grievance under provision pertaining to discharge or discipline or interpretation or application of terms of agreement).

Neither does the dispute fall within the second meaning of "grievance." Although a "claimed violation" of the rules and regulations of the employer supposedly affecting salary and overtime was presented by the Union, the actual controversy, as previously noted, relates to the Union's position that an employer which erroneously makes overpayments to some employees for overtime work and

continues to make such overpayments for a period of time after notice of its mistake, is then precluded from recovering overpayments made subsequent to such notice. There was clearly no misapplication or misinterpretation of any rule or regulation of the employer.

The Union argues that the Memorandum contains no express provisions excluding a particular grievance from arbitration. The short answer to this contention is that the City did not by contract agree to arbitrate "any and all" disputes. The definition of "grievance" is not, as appellee suggests, "extremely broad" but is limited by the terms of the Memorandum and the rules and regulations of the employer. *Croom v. City of DeKalb,* 71 Ill. App. 3d 370, 389 N.E.2d 647 (1979) (additional pay for fire fighters performing the duties of acting officers not subject to arbitration under agreement limiting arbitration to "express provisions"). That a dispute is tied to wages, indirectly, does not make it a "grievance." In sum, if arbitration of this dispute is to be compelled, the court would have to read into the Memorandum more than it contains. This, it may not do.

*Order reversed; costs to be paid by appellee.*