487 A.2d 1220

**HOWARD COUNTY BOARD OF EDUCATION**

v.

**HOWARD COUNTY EDUCATION ASSOCIATION, INC., et al.**

No. 652, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Feb. 13, 1985.

**632**

Charles A. Reese, Ellicott City (Richard D. Neidig and Reese & Carney, Ellicott City, on the brief), for appellant.

James R. Whattam, Baltimore (Walter S. Levin, Susan W. Russell and Weinberg & Green, Baltimore, on the brief), for appellees.

Argued before WILNER, ALPERT and GETTY, JJ.

ALPERT, Judge.

In the instant appeal we are called upon to decide whether a grievance by a Howard County teacher over a classroom observation is subject to arbitration.

## FACTS

The appellee, Howard County Education Association ("HCEA") is the certified collective bargaining agent for Howard County teachers. Appellant, Howard County Board of Education ("Board"), is empowered by statute [1] to negotiate an employment contract on behalf of the Howard County teachers with the HCEA. In 1983 a Master Agreement, which represented the negotiated contract, took effect July 1 and continued in effect until June 30, 1984.

On October 17, 1983, Wilbert McIntyre, a tenured teacher at Talbott Spring Elementary School and member of HCEA, was the subject of a classroom observation by Jacqueline Shulik, Supervisor of Elementary Education. On the observation form Shulik assessed the lesson as being "unsatisfactory." On October 24, 1983, McIntyre, through HCEA, filed a grievance with Shulik requesting "that the written observation ... be expunged from any and all files and not be considered in his year end evaluation or in any way impact upon his employment in the Howard County Public School System."

The grievance was filed according to Step 1 of the grievance procedure set forth in Article III of the Master Agreement. A decision to affirm the observation report as filed was then appealed by HCEA pursuant to Step 2 of the grievance procedure also set forth in Article III of the Master Agreement. Step 2 culminated in a letter from Dr. M. Thomas Goedecke, the then Superintendent of Schools for Howard County, which stated: "I have reached the decision that the observation by Ms. Jacqueline Shulik of the teaching of Mr. Wilbert McIntyre was not in violation of

---

1. Md.Educ.Code Ann. § 6–408 (1982).

the Articles of the Master Agreement with the Howard County Education Association."

HCEA then requested arbitration, also pursuant to the Master Agreement. The Board, in response to this request, filed suit in the Circuit Court for Howard County seeking to enjoin the arbitration because the alleged grievance was not subject to the arbitration provision of the Master Agreement. After a full hearing on the merits, the trial court denied the requested relief, holding that "a valid arbitration agreement exists between the parties and that the specific grievance at issue falls within the scope" of the agreement. The Board now seeks our review of the matter and contends that "the lower court erred in determining that the subject matter of McIntyre's grievance was subject to binding arbitration under the agreement and in denying the Board's request for a permanent stay of arbitration."

## THE MASTER AGREEMENT

Article III of the Master Agreement is entitled "Grievance Procedure." Section A, entitled "General Principles" provides:

> The Association and the Board recognize their responsibility for the prompt and orderly disposition of a grievance that arise (sic) out of the interpretation, application or alleged breach of any of the provisions of this Agreement. To this end, the parties agree that the provisions of this Article shall provide the means of settlement of all such grievances, provided however that nothing herein will be construed as limiting the right of any teacher to have a complaint adjusted without the intervention of the Association so long as the adjustment is not inconsistent with the terms of this Agreement. In any event, a copy of all decisions rendered above the level of immediate supervisor shall be forwarded to the Association.

> A "grievant" is a teacher or teachers filing a grievance.

Section C of that same Article provides that the grievance:

may be submitted by the Association ... to binding arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association. The parties further agree to accept the arbitrator's award as final and binding upon them.

It is Section A that establishes the basis for the arbitration of Mr. McIntyre's grievance. HCEA's position during the course of these proceedings has been that the "unsatisfactory" classroom observation of October 17, 1983, was without cause. This is alleged to be a breach of Article V, § M of the Master Agreement, which provides: "No teacher will be disciplined, reprimanded or reduced in rank or compensation without cause." It contends that this alleged breach is subject to arbitration pursuant to Section A of Article III. The Board, on the other hand, contends: (1) that the executory arbitration agreement is unenforceable inasmuch as these actions were disfavored at common law; (2) that the unsatisfactory observation was not tantamount to being disciplined or reprimanded and, consequently, HCEA's reliance on a breach of section M to invoke arbitration is misplaced; and (3) that the arbitration provision is unenforceable with respect to disputes of its statutorily mandated powers of supervision and control over the Howard County public schools.

## THE LAW

### I. *Enforceability of the Arbitration Provision*

Disputes concerning the enforcement of executory arbitration agreements are not new to this court. *See Stauffer Const. Co. v. Bd. of Educ. of Montgomery County*, 54 Md.App. 658, 460 A.2d 609, *cert. denied*, 297 Md. 108 (1983); *Bd. of Educ. of Carroll Co. v. Carroll Co. Educ. Ass'n*, 53 Md.App. 355, 452 A.2d 1316 (1982); *Mayor & City Council of Balto. v. Balto. City Fire Fighters*, 49 Md.App. 60, 430 A.2d 99, *cert. denied*, 291 Md. 771 (1981); *Bel Pre Medical Center v. Frederick Constr. Co.*, 21 Md.App. 307, 320 A.2d

558 (1974), *rev'd on other grounds*, 274 Md. 307, 334 A.2d 526 (1975).

In *Bel Pre* we traced the common law of arbitration and noted that it was

> the general rule that, in the absence of legislative direction to the contrary, an executory agreement for arbitration of the ultimate rights of the parties, such as an agreement to arbitrate all future disputes that might thereafter arise, even though resort to arbitration was specified to be a condition precedent to court action, was not enforceable.

21 Md.App. at 316–17, 320 A.2d 558. The Board maintains that the executory arbitration provision of the Master Agreement is unenforceable because in this instance the common law applies.

In 1965 Maryland adopted the Maryland Arbitration Act, Md.Ct. & Jud.Pro.Code Ann. § 3–201 *et seq.* (1974, 1984 Repl.Vol.). This act, where applicable, abrogates the common law and favors the validity and, consequently, the enforcement of even executory arbitration agreements.

As stated in *Bel Pre*, "the General Assembly established a policy in favor of the settlement of disputes through the arbitration process and ended the ambivalence of courts under the common law[;] . . . suits to compel arbitration and suits to stay court action pending arbitration are now to be viewed as 'favored' actions." 21 Md.App. at 320, 320 A.2d 558.

There is a provision in the Maryland Arbitration Act, however, which limits its applicability. Section 3–206(b) provides that: "This subtitle does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in the agreement that this subtitle shall apply." A review of the Master Agreement between the parties indicates that an express provision stating the applicability of the Maryland Arbitration Act is conspicuously absent.

In *Wilson v. McGrow, Pridgeon & Co., P.A.*, 298 Md. 66, 467 A.2d 1025 (1983), the Court of Appeals addressed the application of this provision to a contract between a single employer and single employee. The trial court and this Court, on appeal, refused to enforce the arbitration agreement, holding that the common law rule was applicable because the contract did not provide that the Maryland Arbitration Act governed. The Court of Appeals reversed because it found that the statutory exclusion of § 3–206(b) applied only to collective bargaining agreements between multiple employers and employees. 298 Md. at 70, 467 A.2d 1025. There, in an individual contract, the Act was applicable and the statutory favoring of arbitration compelled the Court to mandate it.

In the case *sub judice* the Master Agreement is not an individual contract between an individual employer and employee; all parties concede that it represents the Collective Bargaining Agreement between the Board and HCEA. At first blush, it would appear, therefore, according to *Wilson*, that in the absence of a provision stating that the Arbitration Act applies, common law controls. At common law executory agreements to arbitrate would not be enforceable.

This is indeed the very argument of the Board, which further contends that Section 3–208 of the Arbitration Act [2] only applies as a procedural vehicle for the resolution of this dispute, pursuant to Maryland Rule E4, and conveys no substantive rights to the parties by virtue of its own provision in Section 3–206(b). HCEA, on the other hand, views the Board's position as an attempt to revoke its agreement to arbitrate disputes under their collective bargaining contract. Acknowledging that "there is no dispute that the agreement invovled in this action does not expressly adopt

---

**2.** Md.Cts. & Jud.Proc.Code Ann. § 3–208 provides, in part:

(a) *Petition to Stay*—If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.

the Maryland Uniform Arbitration Act," HCEA argues that "it is equally clear that the parties' agreement to arbitrate is not revocable at will." We agree that, in the context of this case, merely because the agreement did not expressly indicate the applicability of the Act, does not mean that an agreement to arbitrate is unenforceable.

■ We observe that the legislature in enacting the Uniform Arbitration Act did not bar its applicability to collective bargaining agreements, but rather provided that the Act would not apply unless expressly so provided in the agreement. The Act itself and contemporary trends in litigation indicate a strong preference for arbitration. As noted in *Corbin on Contracts*, § 1431 at 596 (1984 Supp.):

Even though a particular statute does not directly apply, it may show that the legislative branch, which has the power to make policy for a state, has changed the common law policies as to the validity and effect of arbitration.... If the state statute has changed its public policy, then the policy of the arbitration act, by which it is possible to agree to arbitrate all questions, fact and law, should be applicable to common law arbitration as well.

From a historical perspective, common law notions of abhorrence to arbitration, which originated out of a sense of fear or the jealous protection of formal legal proceedings, originated in a time when labor relations and negotiations were unknown. *See Bel Pre*, 21 Md.App. at 316–17, 320 A.2d 558. Labor relations and negotiations today, however, are accepted and encouraged as a policy in American commerce and industry. Recognizing the importance of labor negotiations and arbitration in the public education sphere, the General Assembly, in 1971, enacted a statute now codified in Section 6–408(a)(2) of the Education Article, expressly authorizing the negotiation of binding arbitration provisions and collective bargaining agreements between local boards of education and teachers associations. Section 6–408(a)(2), like the Arbitration Act, indicates a recognition

by the General Assembly that arbitration, if contracted for, is the desired method for settling disputes between local school boards and teachers.

■■■■ Thus, it is clear that at least with respect to a public education collective bargaining agreement, which is statutorily authorized, antiquated common law notions abhorrent to arbitration are inapplicable. We agree with the Supreme Court of California which, while holding that a statutorily authorized public contract was enforceable, stated:

> [W]hy negotiate an agreement if either party can disregard its provisions? What point would there be in reducing it to writing, if the terms of the contract were of no legal consequence? Why submit the agreement to the governing body for determination, if its approval were without significance? What integrity would be left in government if government could attack the integrity of its own agreement? The procedure established by the act would be meaningless if the end-product, a labor-management agreement ... were a document that was itself meaningless.
>
> The Legislature designed the act ... for the purpose of resolving labor disputes.... But a statute which encouraged the negotiation of agreements, yet permitted the parties to retract the concessions and repudiate their promises whenever they choose, would impede effective bargaining.... Successful bargaining rests upon the sanctity and legal viability of the given word.

*Glendale City Employee's Association, Inc. v. City of Glendale*, 15 Cal.3d 328, 124 Cal.Rptr. 513, 518–19, 540 P.2d 609, 614–15 (1975).

II. *Substantive Arbitrability*

■■■■ The Board contends that even if the agreement, albeit executory, is enforceable, the dispute, *i.e.*, teacher observation, is not covered by Section A of Article III, the arbitration clause. In *Bel Pre*, Judge Davidson noted that in a suit where the arbitration clause is enforceable, the sole

issue to be resolved is whether there is "an agreement to arbitrate the subject matter of the dispute." 21 Md.App. at 320, 320 A.2d 558. This is a determination to be made by the courts. *Id.* In so doing, however, the general rule is:

Where the language of the arbitration provisions is clear and precise, there is no problem for the court. If it is plain that the dispute sought to be arbitrated falls within the scope of the arbitration clause, arbitration should be compelled. If it is apparent, on the other hand, that the issue sought to be arbitrated lies beyond the scope of the arbitration clause, the opposing party should not be compelled to submit to arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly and specifically excluded.

*Id.* at 321, 320 A.2d 558 (citations and footnotes omitted). Even in the event the arbitration provision is unclear, the "legislative policy in favor of the enforcement of agreements to arbitrate dictates that the question should be left to the discretion of the arbitrator." *Id.* We have also said that: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Baltimore City Fire Fighters,* 49 Md.App. at 66, 430 A.2d 99 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). The Board concedes that this is a correct statement of the law.

In order to determine the arbitrability of the instant dispute, we must first determine what disputes are subject to arbitration under the Master Agreement. The arbitration clause provides for arbitration of grievances that arise out of the:

1. *interpretation* ... of any of the provisions of this Agreement, or

2. *application* ... of any of the provisions of this Agreement, or

3. *alleged breach* of any of the provisions of this Agreement.

(emphasis supplied). This is neither the extremely broad arbitration clause we addressed in *Bel Pre,* wherein the parties agreed to arbitrate "all claims, disputes and other matters," 21 Md.App. at 322, 320 A.2d 558, nor is this the narrow arbitration clause present in *Baltimore City Fire Fighters,* wherein the parties agreed to arbitrate "a claimed violation ... of the rules or regulations of the employer affecting the terms and conditions of employment." 49 Md.App. at 67, 430 A.2d 99.[3]

The precise complaint raised by HCEA is contained in a letter from Marius Ambrose to Jacqueline Shulik, dated October 24, 1983:

> You observed Mr. McIntyre on October 17, 1983 and he received the observation form on October 19, 1983. Your comments on page three of said observation form are absolutely untrue and contradict your comments on page two of the observation form. Therefore, your rating of unsatisfactory on the form is without cause.
>
> Your rating of unsatisfactory on October 17, 1983 is a violation of Article V, Paragraph M as well as any and/or all other relevant articles of the Master Agreement.

HCEA views the observation report as being within the purview of Article V, Section M of the agreement, which provides: "No teacher will be disciplined, reprimanded, or reduced in rank or compensation without just cause." The Board argues that "an observation report, even one indicating that the lesson observed was 'unsatisfactory,' is not and does not constitute a 'discipline, reprimand or reduction in rank.'" HCEA parries with the argument that "even as-

---

**3.** In Baltimore City Fire Fighters, the union sought arbitration concerning the City's recoupment of overtime compensation erroneously paid. We held that the real issue involved what effect, if any, notice to the City that it was making these overpayments had upon its ability to recover the payments made subsequent to such notice. This case, we noted, involved no violation of any rule of the employer. 49 Md.App. at 68–69, 430 A.2d 99.

suming that the observation report is not primarily intended for use as a disciplinary action or reprimand, it clearly has an important effect upon any such action ultimately taken." They observe that Dr. M. Thomas Goedeke, Superintendent, acknowledged that a series of unsatisfactory observation reports could contribute to an unsatisfactory evaluation with possible resulting disciplinary action.

Although the record clearly reveals that the Board had in the past treated classroom observations as arbitrable grievances, we cannot say that the arbitration clause in the case *sub judice* is so precise and clear that a classroom observation plainly falls within its scope. In this regard, we take a somewhat different view from the trial court which found "this arbitration clause to be extremely clear and unambiguous and broad in scope. Actually open-ended." On the other hand, we cannot state that it clearly lies beyond the scope of arbitration.

In the latest pronouncement on this dilemma, Judge Davidson, speaking for the Court of Appeals in *Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 468 A.2d 91 (1983) stated:

> We are persuaded that when the language of an arbitration clause is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement, the legislative policy in favor of the enforcement of agreements to arbitrate dictates that ordinarily the question of substantive arbitrability initially should be left to the decision of the arbitrator. Whether the party seeking arbitration is right or wrong is a question of contract application and interpretation for the arbitrator, not the court, and the court should not deprive the party seeking arbitration of the arbitrator's skilled judgment by attempting to resolve the ambiguity.

*Id.* at 107, 468 A.2d 91.

▪ Accordingly, this matter should be submitted to an arbitrator; as a first step the arbitrator must determine if indeed the observation reports are properly the subject of a

grievance. If he determines that they are not, that is the end of the arbitration process. If he determines that they are, he should proceed accordingly.

### III. *Supervision and Control Over Public Schools*

Finally, the Board asserts that even if the agreement to arbitrate is enforceable and the matter at issue is otherwise arbitrable, we should nonetheless refuse to compel arbitration because "the said arbitration clause cannot usurp State Education Law." The Board contends that State law "has expressly vested the county superintendent and his professional assistants with the responsibility of overseeing the professional performance of county teachers, including specifically the responsibility of observing instruction, giving suggestions for improvements, and advising teachers." It argues that allowing an arbitrator to decide if a performance is unsatisfactory would usurp its statutory function. It maintains that it is only permitted to negotiate the subjects of salary, wages, hours and other working conditions,[4] and that it may not delegate to an arbitrator the duty of assessing a teacher's classroom performance.

The Board relies on *Bd. of Ed. of Carroll Co. v. Carroll Co. Educ. Ass'n*, 53 Md.App. 355, 452 A.2d 1316 (1982), wherein we held that a local school board may not delegate, through binding arbitration, its statutory responsibility to determine teacher tenure. In *Carroll Co.*, the arbitration clause contained a limitation on the arbitrator's authority. It provided that the arbitrator would have no authority to pass an award which would deprive the School Board "of any of its powers delegated to it by law." We noted, however, that notwithstanding this limitation, the "local board could not delegate that authority even if it had expressly done so in an agreement." *Id.* at 358, 452 A.2d 1316.

---

4. Md.Educ.Code Ann., § 6–408 (1978).

Unlike the instant case, however, applicable in *Carroll Co.*, was § 6–411(a) of the Education Code, which states that: "This subtitle does not supersede any other provision of the Code or the rules and regulations of public school employers that establish and regulate tenure." Md.Ed. Code Ann. § 6–411(a) (1978). There seems to be no similar provision applicable to the case *sub judice.* The Board nonetheless relies on Article XXI, Section A of the Agreement, which states:

If any provision of this Agreement or any application of this Agreement to any teacher or group of teachers is held to be contrary to law, then such provision or application will not be deemed valid and subsisting, except to the extent permitted by law, but all other provisions or application will continue in full force and effect.

The Board attempts to analogize this provision to the one contained in *Carroll Co.* We, however, do not see the similarity. In *Carroll Co.*, the provision attempted to limit the arbitrator's authority and the statute proscribed delegation of the determination of tenure. In the instant case, the provision is simply a severability clause—it is not an attempt to limit anyone's authority under the agreement.

The Maryland Code permits the Board and Superintendent to promulgate their own policies with respect to carrying out their statutory functions. *See* Md.Educ.Code Ann. § 4–107(4) (1978). The Superintendent is charged with the duty of advising "teachers as to their further study and professional development" Md.Educ.Code Ann. § 4–205(f)(1) (1978). The Board argues that classroom observations are a tool used to carry out this function and that to permit an arbitrator to make a determination as to whether a classroom performance is satisfactory would usurp this function.

In *School Community of Boston v. Boston Teachers Union*, 372 Mass. 605, 363 N.E.2d 485 (1977), the Court recognized that there are some disputes "in which the ingredient of educational policy is so comparatively heavy that even voluntary arbitration would be excluded." *Id.* at 490. This, however, had to be decided on a case-by-case

basis. *Id. See also Board of Ed., So. Stickney School Dist. III v. Johnson,* 21 Ill.App.3d 482, 315 N.E.2d 634, 641 (1974) (certain matters found in the school code are not to be delegated to an outside party—the duty to appoint teachers); *Bd. of Ed., Cook Co. v. Ill. Ed. Ass'n,* 100 Ill.App.3d 1026, 56 Ill.Dec. 457, 427 N.E.2d 789 (1981) (issue of whether teachers could be assigned to detention hall duty assignments with no extra pay was arbitrable); *Boston Teachers Union, Local 66 etc. v. Sch. Com. of Boston,* 370 Mass. 455, 350 N.E.2d 707 (1976) (failure to hire substitute teachers subject to arbitration); *School Comm. of Danvers v. Tyman,* 372 Mass. 106, 360 N.E.2d 877 (1977) (teacher's grievance asserting failure to follow appropriate evaluation procedures is arbitrable); *Dennis-Yarmouth Regional Sch. Comm. v. Dennis Teachers Assoc.,* 372 Mass. 116, 360 N.E.2d 883 (1977) (nonrenewal of contract of a non-tenured teacher was not arbitrable; grievances over the failure to follow its contractual obligations concerning teacher evaluation and the maintenance of teachers' files in connection with the nonrenewal are, however, arbitrable); *Sch. Comm. of West Bridgewater v. West Bridgewater Teachers Ass'n,* 372 Mass. 121, 360 N.E.2d 886 (1977) (grievance over failure to follow teacher evaluation procedures is arbitrable); *Iowa City Comm. Sch. Dist. v. Iowa City Educ. Ass'n,* 343 N.W.2d 139 (Iowa 1983) (permitting an arbitrator to decide what constitutes unsatisfactory teacher performance is not contrary to public policy); *Portland Ass'n of Teachers v. Portland Sch. Dist. No. 1,* 51 Or.App. 321, 625 P.2d 1336 (1981) (grievances alleging that evaluations were arbitrary and capricious were arbitrable).

It is difficult to fashion a bright line rule as to those subjects of its authority that a local school board may through the bargaining process delegate to some third party such as an arbitrator. When the "ingredient of educational policy is so comparatively heavy" so as to exclude voluntary arbitration is no matter of easy decision, even if on an *ad hoc* basis.

■  The Board argues "assuming arguendo that a classroom observation is a form of discipline or reprimand within the meaning of Article V, Par. M of the agreement, application of the grievance procedure and the binding decision of an arbitrator would be void as contrary to those provisions of State law which authorize and empower local boards of education and the State Board to review matters dealing with the proper administration of the school system," and "that the County Board of Education is without authority to delegate the superintendent's statutory responsibilities to an arbitrator through application of the grievance process in these circumstances."  This is another way of saying that state law forbids the bargaining away of educational policy.  We agree that local boards cannot bargain away matters dealing with the very establishment of educational policy.  On the other hand, we see no prohibition, subject to a statutory proscription such as in the *Carroll County* case, that would preclude bargaining on matters dealing with the implementation of that policy.  Under the facts of the case *sub judice*, without deciding that the classroom observation is arbitrable under the contract, it is a matter that deals with the implementation of the educational policy, not its establishment.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.