547 A.2d 1048

STEPHEN L. MESSERSMITH, INC.

v.

BARCLAY TOWNHOUSE ASSOCIATES et al.

No. 83, Sept. Term, 1986.

Court of Appeals of Maryland.

Oct. 11, 1988.

Ronald M. Miller (Paul N. Nussbaum, Sheldon L. Gnatt and Reichelt, Nussbaum, Brown, Dukes & LaPlaca, on the brief), Greenbelt, for petitioner.

Timothy L. Mullin, Jr. (Miles & Stockbridge, on the brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

COLE, Judge.

In this case we shall determine the proper standard of review when a party to an arbitration proceeding moves to vacate the arbitration panel's award, claiming that because the parties never agreed to arbitrate, the panel lacked jurisdiction to decide the dispute. Specifically, we must decide whether the circuit court was correct in deferring to the arbitrators' decision to assert jurisdiction unless it was "completely irrational." In addition, we shall address the meaning of a *de novo* review, and lastly, whether the right to such a review was waived by proceeding by cross-motions for summary judgment in the circuit court.

The Maryland Uniform Arbitration Act, Md.Cts. & Jud. Proc. Code Ann. §§ 3–201 through 3–234 (1974, 1984 Repl. Vol.), embodies the law we must construe to answer these questions. More particularly, we shall focus on two sections, § 3–208, entitled "Stay of arbitration," and § 3–224, entitled "Vacating award." Section 3–208 provides in pertinent part:

> (a) *Petition to stay.*—If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings. . . .
>
> (c) *Determination of existence of arbitration agreement.*—If the court determines that existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it finds for the petitioner. If the court finds for the

---

* COUCH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

adverse party, it shall order the parties to proceed with arbitration.

Section 3–224 provides in pertinent part:

(b) *Grounds.*—The court shall vacate an award if: ...

(5) There was no arbitration agreement as described in § 3–206, the issue was not adversely determined in proceedings under § 3–208, and the party did not participate in the arbitration hearing without raising the objection.

In order to appreciate the context in which these issues arise, we set forth the facts fully. Barclay Townhouse Associates (Barclay), a developer, contracted the Henry A. Knott Remodeling Co., Inc. (Knott), a general contractor, to manage the construction of a rehabilitation project in Baltimore City; Knott was authorized to conduct negotiations with subcontractors. Knott's representative and Project Manager for the Barclay Townhouse job, Larry Ellison, entered into negotiations with Stephen L. Messersmith, President of Stephen L. Messersmith, Inc., for the project's drywall and metal stud work. Ellison accepted Messersmith's final bid by telephone.

Messersmith asserts that Ellison's acceptance of the bid was made conditional upon the inclusion of several provisions, one of which was binding arbitration of disputes arising under the contract. Furthermore, Ellison promised Messersmith that Messersmith would be sent the final contract and instructed him, in the meantime, to begin work on the project. Messersmith received a contract from Ellison and made some revisions. Messersmith contends that Ellison orally agreed to the changes but did not return the contract to Messersmith. After Messersmith complained of his failure to receive a signed contract, a meeting was held in Barclay's project site trailer on April 6, 1982, among representatives of all parties. At this meeting Ellison made handwritten interlineations onto the typed "Trade Contract," including provisions requiring binding arbitration of disputes between the parties. These provisions were initialed by Ellison and Messersmith; however, with the excep-

tion of Messersmith's signature, the signature lines at the end of the contract were left blank.[1] The contract provided that Messersmith's work began on November 1, 1981 and was to be completed on May 1, 1982.

Subsequent to the April 6th meeting, disputes arose between Messersmith and Knott regarding the scope and quality of Messersmith's work, and his failure to be paid for same. Consequently, Messersmith instituted arbitration proceedings, seeking $108,267.62 against Knott and Barclay. At the hearing, both defendants challenged jurisdiction on the basis that no written agreement to arbitrate existed. Following brief oral argument on the issue, the arbitration panel deliberated for ten minutes, decided that it had jurisdiction, and the hearing continued with Barclay's full participation.

At the arbitration hearing both Stephen Messersmith and Larry Ellison testified. Messersmith testified that his company commenced and continued its work on the project because he and Ellison reached an understanding that Mes-

---

1. In order to be valid and enforceable, an agreement to arbitrate must be in writing; however, there is no requirement that the writing be signed. Md.Cts. & Jud.Proc.Code Ann. § 3-206(a) (1974, 1984 Repl. Vol.) provides in pertinent part:
    A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable....

    *Compare* Tennessee's version of the Uniform Arbitration Act which provides in pertinent part as follows:
    A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that for contracts relating to farm property, structures or goods, or to property and structures utilized as a residence of a party, *the clause providing for arbitration shall be additionally signed or initialed by the parties.* (Emphasis added).
    Tenn. Code Ann. § 29-5-302 (1988 Supp.).
    Moreover, a signature is not always necessary to the execution of a written contract. *Porter v. General Boiler Casing Co.*, 284 Md. 402, 410-11, 396 A.2d 1090, 1095 (1979).

sersmith, Inc. had a binding agreement with Knott and Barclay. According to Messersmith, Ellison instructed him to begin work with the assurance that a fully executed contract, containing the terms agreed to by Messersmith and Ellison, would be forthcoming. On the other hand, Ellison denied ever indicating to Messersmith that any contract terms were agreed upon or that a signed contract would be forwarded. Ellison's testimony was consistent with the position maintained by Barclay that, although several contract drafts were exchanged, no draft of a contract containing an arbitration agreement was ever agreed to among, or signed by, the parties. After apparently resolving any witness credibility determinations in favor of Messersmith, the arbitrators awarded Messersmith $63,-395.13 plus costs and interest against Barclay.

Barclay petitioned the Circuit Court for Prince George's County to vacate the arbitration award on the basis that it had never agreed to submit to arbitration. Messersmith and Barclay agreed to proceed by cross-motions for summary judgment. The circuit court denied Barclay's motion for summary judgment and petition to vacate and granted Messersmith's motion for summary judgment. The court stated:

> In reviewing the determination of an arbitration panel, this Court's function in confirming or vacating an award is "severely limited".... A court has authority to vacate an award that is based on a completely irrational interpretation of the contract.... Applying this standard, this Court does not have grounds to vacate the award.... The record supports the arbitration panel's finding that a valid arbitration clause existed. We can find no error of fact or law made by the arbitration panel that would render their decision completely irrational.

Barclay appealed this result to the Court of Special Appeals, which reversed, *Barclay Townhouse v. Messersmith, Inc.*, 67 Md.App. 493, 508 A.2d 507 (1986), reasoning that because an arbitrator has no power to act in the absence of an agreement to arbitrate, the "completely irrational" stan-

dard of review utilized by the intermediate appellate court for reviewing arbitration awards on the merits is totally inappropriate on the threshold issue of whether there is an agreement to arbitrate. 67 Md.App. at 497, 508 A.2d at 509. That court remanded the case with instructions that the circuit court undertake a *de novo* review to determine whether an agreement to arbitrate existed. 67 Md.App. at 498, 508 A.2d at 510. We then granted Messersmith's petition for a writ of certiorari.

It is axiomatic that an arbitration panel derives its authority to decide a given dispute from the disputing parties themselves. As this Court noted more than forty years ago: " 'The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. * * * No one is under a duty to resort to ... [arbitration] tribunals, however helpful their processes, except to the extent that he has signified his willingness.' " (Citation omitted). *Continental Milling & Feed Co. v. Doughnut Corp.,* 186 Md. 669, 675, 48 A.2d 447, 450 (1946). Thus, it is beyond dispute that, absent an arbitration agreement between the parties, an arbitration panel cannot validly assert jurisdiction to decide a dispute between them. *Accord Arrow Overall Supply Co. v. Peloquin Enterprises,* 414 Mich. 95, 323 N.W.2d 1 (1982) (" 'Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' ... It follows that a valid agreement must exist for arbitration to be binding.").

In the case at bar, Barclay participated in the arbitration only after duly noting its objection to the panel's jurisdiction on the ground that no agreement to arbitrate existed. The panel briefly considered this threshold issue prior to hearing any testimony and summarily concluded that it had jurisdiction. However, the arbitrators made clear to the parties that their ruling asserting jurisdiction was "made without prejudice to any legal remedy that you may desire to take in court." Nevertheless, on appeal, the

panel's decision to assert jurisdiction was given great deference by the circuit court's application of the "completely irrational" standard of review.

That standard, which permits the court to vacate only those arbitration awards it views as "completely irrational," was applied by the Maryland Court of Special Appeals in *O–S Corp. v. Samuel A. Kroll, Inc.*, 29 Md.App. 406, 348 A.2d 870 (1975). As that court explained it, a completely irrational award "is inferentially opprobrious, *i.e.*, '[e]xpressing or carrying a sense of disgrace or contemptuous scorn', [footnote omitted] causing it to be suspect in its conception." 29 Md.App. at 409, 348 A.2d at 872. The *O–S Corp.* court thus authorized judicial relief "from an arbitration award that was arrived at in good faith but, because of grossly misguided judgment, [was] shockingly absurd[.]" 29 Md.App. at 408, 348 A.2d at 872.

Preliminarily, we note that the *O–S Corp.* case and the "completely irrational" standard discussed therein has never been approved by this Court. Moreover, as we see it, application of a deferential standard of review is appropriate only where the parties indisputably agree to submit to arbitration. Stated another way, while the completely irrational standard of review may or may not represent the proper approach when the arbitral jurisdiction is unquestioned,[2] when the arbitrators' very authority to adjudicate

---

**2.** *Cf. Bd. of Educ. v. P.G. Co. Educators' Ass'n,* 309 Md. 85, 105, 522 A.2d 931 (1987), where we stated:

> Since ... the Maryland Uniform Arbitration Act is not applicable to the instant arbitration award, we need not and do not decide whether an arbitration award subject to the Uniform Act may be vacated for an error apparent on the face of the award or for a "mistake so gross as to work manifest injustice" or for "manifest disregard" of the law. Resolution of that issue by this Court must await an appropriate case where the question is presented.

We went on to hold in that case that

> [u]nder Maryland common law standards for reviewing arbitration awards ... an award is subject to being vacated for a "palpable mistake of law or fact ... apparent on the face of the award" or for a "mistake so gross as to work manifest injustice." As the award in

the dispute is challenged, such obedience to the arbitrators' assertion of jurisdiction is clearly inapt. *Accord Local 589, Amalgamated Transit Union v. Mass. Bay Trans. Auth.,* 392 Mass. 407, 467 N.E.2d 87 (1984) (In determining whether an arbitrator exceeded his authority, judicial review is independent of and should not defer to the arbitrator's opinion.). *See also* 5 Am.Jur.2d, *Arbitration and Award,* § 15, pp. 531–32 (The question of the validity of the contract to arbitrate is basically a judicial question.), and cases cited therein.

Our conclusion that the circuit court erred in applying a deferential standard of review finds support in appellate decisions of this state as well as other jurisdictions. For example, in *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.,* 274 Md. 307, 334 A.2d 526 (1975), we considered the question of whether the timeliness of a demand for arbitration was itself an arbitrable issue. We held that because the timeliness of such a demand is a threshold question, "[i]n the final analysis, it is for the courts and not the arbitrators to determine the timeliness of a demand for arbitration...." 274 Md. at 314, 334 A.2d at 530. Similarly, because the existence of an agreement to arbitrate is a threshold issue, the courts must have authority to assess, independently of the arbitrators' point of view, whether or not the parties ever reached such an agreement.

More recently, in *Bd. of Ed. of Charles Co. v. Ed. Ass'n,* 286 Md. 358, 408 A.2d 89 (1979), this Court reviewed an arbitration award challenged on the ground that the arbitrator exceeded his powers because the underlying contract was illegal. We observed that

Section[ ] 3–224 establish[es] an orderly mechanism whereby *a court, not an arbitrator,* makes the final determination of the legality of a contract before an

---

this case is not governed by statutory review criteria, it is subject to these common law standards. *Id.*

arbitration award is enforced. (Emphasis added). 286 Md. at 366, 408 A.2d at 92.

Similarly, in the case before us, the final determination of whether a valid contract to arbitrate existed between the parties must be made by a court, not an arbitrator.

The Court of Special Appeals addressed a related issue in *Baltimore v. Balto. City Fire Fighters,* 49 Md.App. 60, 430 A.2d 99 (1981), holding that "[w]here the parties are, as here, in disagreement on the very question whether there exists an agreement to arbitrate the subject matter of the dispute, the resolution of that question is for *the court* in an appropriate proceeding." (Emphasis added). 49 Md. App. at 65–66, 430 A.2d at 102. We agree. While the facts in that case involved a valid agreement to arbitrate, and the issue was whether the particular dispute was an arbitrable issue, the conclusion reached by the court is just as applicable where the issue is whether there is an agreement to arbitrate at all. The United States Supreme Court made this clear in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964),[3] when it stated, "just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori,* it cannot be compelled to arbitrate if an arbitration clause does not bind it at all."

In *Wiley,* the Supreme Court also stated:

'Under our decisions, whether or not the company was bound to arbitrate ... is a matter to be determined by the Court on the basis of the contract entered into by the parties.' (Citation omitted). 376 U.S. at 546–47, 84 S.Ct. at 912–13.

---

**3.** We recognize that *Wiley, supra,* and *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), cited *infra,* were decided under § 301 of the Labor Management Relations Act and not the Uniform Arbitration Act. Nevertheless, we find these cases to be logical and persuasive authority on the issues facing us.

The Court recently reaffirmed the principle in *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986):

> Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

Moreover, these principles apply with as much force in the scenario where a party refuses to participate in arbitration, citing lack of any agreement to arbitrate, as in the situation in the case at bar where a party (here, Barclay) participates in the arbitration and therein raises an objection to the proceedings based on the lack of an arbitration agreement. The Maryland statutory scheme supports this view. Under § 3–208 of the Courts Article, a party who denies existence of the arbitration agreement "*may* petition a court to stay commenced or threatened arbitration proceedings." (Emphasis added). Significantly, the legislature used the permissive "may" in the statute, implying that a party is not foreclosed from electing to raise the issue *after* arbitration. Indeed, § 3–224(b)(5) provides in pertinent part:

> (b) *Grounds.*—The court shall vacate an award if:
>
> (5) There was no arbitration agreement as described in § 3–206, the issue was not adversely determined in proceedings under § 3–208, and the party did not participate in the arbitration hearing without raising the objection.

Barclay participated in the arbitration and raised the objection, thereby preserving for review the issue of whether there was an arbitration agreement.

Messersmith, however, maintains that an "obvious distinction" exists between § 3–208 and § 3–224 in that a *de novo* review is provided only in the former. If the legislature had intended to establish two *de novo* proceedings in different sections of the Maryland Uniform Arbitration Act, Messersmith argues, it would have plainly so provided. Messersmith concludes that all that a party proceeding under § 3–224(b)(5) is entitled to is a record review based on the "completely irrational" standard of review.

We reject Messersmith's interpretation of these statutory provisions. Section 3–208 does not provide for a "de novo review," nor does § 3–224(b)(5) provide for a "record review." Instead, both sections simply are mechanisms through which a court (based upon its independent assessment of the evidence thereby concluding that no agreement to arbitrate exists) is authorized to either stay an arbitration proceeding, under § 3–208, or invalidate it after the fact, under § 3–224(b)(5).

In support of our interpretation of these provisions of Maryland's Uniform Arbitration Act, we find illuminating Chief Judge Cardozo's discussion of a similar New York statutory scheme in *Finsilver, Still & Moss, Inc. v. Goldberg, Maas & Co.*, 253 N.Y. 382, 390–91, 171 N.E. 579, 581–82 (1930):

> Two classes of parties are covered by the statute, those who stay out of the arbitration, and those who go in.... [If a party to the controversy chooses to stay out], [h]e may be heard by a court or judge in support of his contention that the arbitration is of no effect in that he never bound himself to arbitrate
>
>  . . . .
>
> \*     \*     \*     \*     \*     \*
>
> Rights substantially as great, however, are assured to the party who is in from the beginning. Nothing in the statute denies to one so situated the right to participate in the arbitration, and still contest the jurisdiction. On the contrary, the section opens with the declaration that the award shall be valid ... in those cases and in those only where the arbitration is "pursuant to" the provisions of a contract. If it is not pursuant to a contract, if in truth there is no contract at all or none calling for arbitration, the self-constituted tribunal is a nullity, without power to bind ... by force of its decision.

We view § 3–224(b)(5) to be equally if not more explicit than the statute described by Chief Judge Cardozo. It protects the rights of a party who participates in the

arbitration proceeding under protest, thereby preserving for review the issue of whether an agreement to arbitrate was ever reached by the parties.

■ As we have made clear, an award issued by an arbitration panel acting without jurisdiction should be accorded no deference at all on appeal, when the basis for appeal is that there was no agreement to arbitrate. The precise question presented in this case becomes what is the appropriate standard of review when an arbitration award is attacked for lack of jurisdiction. In light of the foregoing, we hold that the proper procedure for reviewing cases arising under § 3–224(b)(5) is to conduct a *de novo* review.[4] After receiving the evidence, the court shall decide by a preponderance of the evidence whether an agreement to arbitrate exists, giving no weight to the view expressed by the arbitration panel. If an agreement to arbitrate is found to exist, judgment may be entered on the arbitral award. Otherwise, the award shall be vacated.

■ Lastly, we disapprove Messersmith's contention that Barclay waived its right to a *de novo* review when it consented to proceed by cross-motions for summary judgment in the circuit court. That an issue is presented on appeal in such a manner in no way diminishes the standard of review to which a party is entitled. Md. Rule 2–501 simply provides that summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Nothing in that rule leads us to conclude that Bar-

---

**4.** We do not suggest by use of the term *"de novo* review" that the court must of necessity hear live testimony. It may be that evidence on the issue in a particular case is limited to documents and agreed statements of facts by the parties. Clearly, however, evidence which requires the court to decide an issue of witness credibility must be presented anew to the court for that credibility determination. This case requires such determinations of witness credibility. That fact also makes it inappropriate for summary judgment. We have consistently held that credibility is not an issue to be determined on summary judgment. *E.g., Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564, 568 (1981).

clay's election to submit a motion for summary judgment effected a waiver of his substantive right to a *de novo* review of the arbitration panel's decision to assert jurisdiction. Instead, it merely indicated Barclay's preference for an expedited procedure.

For the above reasons, the decision of the Court of Special Appeals should be affirmed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. APPELLANT TO PAY COSTS.